STATE OF MINNESOTA *vs.* JACOB LEVY.

June 29, 1876.

**Witness—Objection on Ground of Nonage.**—The decision of the trial court upon an objection to a witness on the ground of nonage, or want of intelligence, cannot be reviewed unless there is a clear abuse of discretion, or the court admits or rejects the witness upon an erroneous view of a legal principle.

**Same—Competency in Respect of Understanding.**—A witness who understands that he is brought to court to tell the truth, that it is wrongful to tell a lie, and that he will be punished if he tells a lie, has, under the statute, sufficient understanding of the obligation of an oath to be competent.

**Evidence to Prove a Fact Presumed.**—The admission of a question to a witness, which, though strictly improper, will only tend to prove what in the absence of evidence must be presumed, is no ground of error.

**Larceny by Finder of Property Lost by the Owner.**—Upon a charge of larceny of property which had been lost by the owner, an instruction to the jury that, ",to render the finder of lost property guilty of larceny, two things must concur: (1) the finder must, at the time of the finding and taking, have and entertain the intention of feloniously appropriating the property to his

own use, without the consent of the owner; (2) he must, at the time of the finding, either know the owner, or have the immediate means of ascertaining him, or have reason to believe, and actually believe, that the owner will be found," states the correct rule. It is not necessary that the finder should have actual knowledge of who the owner is.

The defendant was tried in the district court for Winona county, before *Mitchell*, J., on October 14, 1875, on an indictment for the larceny of $700, the property of one Wright. The latter, being called as a witness, testified that he was an insurance agent, and that early in the morning of September 14, 1874, he visited the shop of defendant, in which a great variety of goods was kept for sale, to advise him of the expiration of his insurance policy; that he then had in his pocket the money alleged to have been stolen, which consisted of bank-notes and treasury-notes, in a package enclosed in a yellow paper and tied with twine. His testimony further tended to show that he lost the package in defendant's shop at the time of this visit.

One Minnie Bohn, a child between eight and nine years old, was offered as a witness for the prosecution. The defendant's counsel objected that she was not of proper age, whereupon the following preliminary examination took place:

*Question.* Do you know what you are here for? *Answer.* Yes.

*Q.* Do you go to school? *A.* Yes.

*Q.* How long have you been to school? *A.* I don't know how long.

*Q.* You are eight years old, are you? *A.* Yes.

*Q.* Do you go to Sunday-school on Sunday? *A.* Yes.

*Q.* Do you know that it is not right to tell a lie? *A.* Yes.

*Q.* Do you know what they do to little girls that do tell lies? Do you think it would be right for you to come here and not tell the truth? *A.* No, ma'am.

*Q.* If you tell what you know about this Levy matter,. would you tell just what was true? *A.* Yes, ma'am.

*Q.* Just what you saw, and nothing else? *A.* No, ma'am.

*Q.* Do you know that if you should tell a lie here in court, you would be punished? *A.* Yes, ma'am. (The last answer was taken after defendant's objection to the question, as incompetent, had been overruled, and an exception taken.)

*Q.* (Cross-examination.) Minnie, do you know the nature of an oath? Do you know what it means to take an oath? (Question repeated several times without response.)

*Q.* (By the court.) Could you tell these gentlemen what it means to be sworn in court? (No response.)

*Q.* How old are you, Minnie? *A.* Eight years old.

*The Court.* She is a pretty young witness to be sworn in a criminal case; but I will let her be sworn, and give the jury some instructions in regard to her testimony. The point is this, that if a person called as a witness understands that he is brought here to tell the truth, that it is wrongful to tell a lie, and that he will be punished if he tells a lie, I think that is enough to entitle any person to be sworn. (To this ruling the defendant excepted.) I rather gather from this child's statements that she considers it wrong to tell a lie. I will allow the examination to go no farther.

The witness was then sworn and testified that she saw Wright lay a package—which she described, and which her description showed to be similar to that described by him in his testimony—on a box in defendant's shop; that Wright went out without taking up the package, and that soon afterward she saw defendant's wife take it up, tear off one corner, so as to disclose what looked like money, and then give it to defendant, who put it into his pocket. On her cross-examination the witness testified that she forgot whether she swore, on the former trial of the case, (in April,.

1875,) that Wright told her how the package was tied up, and that she did swear on the former trial that one Briggs told her about Mr. Wright leaving the money on the box, and that he told her about the money being tied with a string. At the close of her testimony Wright was recalled, and testified that he never told her that he took the money out of his pocket and put it on the box; and Briggs was called, and testified that he never told her that Mrs. Levy had given the money to defendant. The testimony of these witnesses was taken under objection that it was "incompetent, immaterial, and not proper for impeachment," and exceptions were taken to the overruling of the objections.

The testimony of the witness Minnie Bohn was supported by that of other witnesses for the prosecution, and was contradicted by witnesses for the defence.

In the package lost by Wright there was also a draft for $563. On the day following the loss the defendant was arrested, and an examination was had before a magistrate, at which one Anne Steeborn testified to having seen Mrs. Levy take the package from the box in defendant's shop, open it, and carry it into an adjoining room; and, after the examination, the sheriff said to defendant that either defendant's wife or Mrs. Steeborn had the money. On the following day the defendant and his brother Moses called on the county attorney, and defendant told him that Moses had a statement to make, and left the room. Moses then told the county attorney that he had seen a woman putting something under the stoop of a house. By the attorney's direction, Moses repeated his statement to the sheriff, and pointed out the house to him. The sheriff searched beneath the stoop, and found the missing draft wrapped up in paper. The house was that of Mrs. Steeborn, who, at the trial, repeated her testimony given at the preliminary examination, and denied any knowledge of the draft. The defendant's counsel objected to the introduction in evidence

of the statements and acts of Moses which led to the find-
ing of the draft, on the ground that defendant was not
properly connected therewith.    The objection was over-
ruled, and exception taken.    The exceptions taken to the
charge are stated in the opinion.    The defendant was con-
victed, a new trial was refused, and he appealed to this
court.

*Davis, O'Brien & Wilson, G. & W. Gale,* and *J. W.
Dyckson,* for appellant.

*Geo. P. Wilson,* Attorney General, and *A. H. Snow,*
for the State.

GILFILLAN, C. J.   When a witness is objected to, on
the ground that he or she is incompetent by reason of non-
age or want of intelligence, it is the province of the trial
court to determine the witness' competency, and its decision
cannot be reviewed unless there is a clear abuse of discre-
tion, or the court admits or rejects the witness upon an
erroneous view of a legal principle.    *Com.* v. *Mullins,* 2
Allen, 295 ;  *Com.* v. *Hills,* 10 Cush. 530.

No question seems to have been made as to the witness
Minnie Bohn's capacity to receive just impressions respect-
ing the facts upon which she was to be examined.   Upon
the question of her understanding the obligation of an oath,
the court below seems to have held it sufficient to admit her
if she understood that she was brought to court to tell the
truth, that it is wrongful to tell a lie, and that she would be
punished if she told a lie.   Under our statute, which admits
as well those who profess to believe only in the punishment
which human laws inflict as those who believe in punish-
ment by divine law, we think the test acted on by the court
below sufficient.

The questions put to the witnesses Wright and Briggs
were improper, in the same sense that evidence to sustain a
witness' character for veracity is, unless there is evidence
impeaching it, improper.   It is superfluous.   Until a wit-
ness' character is impeached, it is presumed to be good ;

and in this case, until the contrary should be shown, the witness Minnie Bohn was presumed to testify from her own knowledge, and not from the suggestions of others. The answers of Wright and Briggs proved only what, without the answers, would have been presumed, and for that reason no prejudice could have resulted from admitting them, though they were superfluous.

The connection of Jacob Levy with the attempt of his brother, Moses, to mislead the sheriff as to who had committed the larceny was sufficiently shown to admit proof of what Moses said and did for that purpose.

The larceny charged was of property which had been lost or mislaid by the owner, and found by the defendant's wife, and by her passed at once to her husband. The rule laid down by the court, in its instructions to the jury, as applicable to cases of finding, was that, " to render the finder of lost property guilty of larceny, two things must concur : (1) The finder must, at the time of the finding and taking, have and entertain the intention of feloniously appropriating the property to his own use, without the consent of the owner. (2) He must, at the time of finding, either know the owner, or have the immediate means of ascertaining him, or have reason to believe, and actually believe, that the owner will be found." This definition of the offence the court did not vary in any part of its charge. Detached portions of the charge were excepted to, but such portions were not intended by the court, and could not have been understood by the jury, as stating all the elements necessary to constitute the offence.

The defendant requested the court to charge " that the jury must acquit the defendant, unless they find (1) that he originally took the property with a felonious intent ; (2) that said property, at the time it was taken by him, must have been known by him to belong to Wright, (the owner,) and there must have been some mark or marks upon it by which he could gain immediate knowledge as to who the

owner was, and must have acquired a knowledge of who the owner was before he converted the same to his own use," which charge the court refused.

The difference between the charge requested and that given consists in this, that the charge requested would make the offence (although the felonious intent were proved) depend on the finder knowing, before he converts the property, who the owner is; while the charge as given requires only that he shall either know who he is, or have the immediate means of ascertaining him, or have reason to believe, and actually believe, that he will be found. There are some authorities which hold the first of these propositions to be the correct rule, (see 2 Bish. Cr. Law, § 860, and cases cited in note 7,) while others hold the latter rule. Among these *Regina* v. *Thurborn*, 2 Carr. & Kir. 832, is a leading case. The rule there laid down is, if a " man find goods that have been .actually lost, or are reasonably supposed by him to have been lost, and appropriates them with intent to take the entire dominion over them, really believing when he takes them that the owner cannot be found, it is not larceny; but, if he has taken them with like intent, though lost, or reasonably supposed to be lost, but reasonably believing that the owner can be found, it is larceny."

And this we think to be more consonant to reason; for when a man finds goods which do not belong to him, he can only be justified in taking them, with intent to entirely appropriate them to himself, by the belief that they have been abandoned by the true owner, or that such owner cannot be found. The moral guilt of intending to so appropriate them, when he has reason to believe, and does believe, that the owner will be found, is certainly as great as though he actually knows who the owner is.

Finding goods under such circumstances, he has a right to take them into his possession with a lawful intent—that is, with intent to return them to the owner when ascertained; but he has no right, under such circumstances, to

take them with intent to appropriate them. Such taking would be a trespass. *Merry* v. *Green*, 7 M. & W. 623. The instruction states the correct rule.

Order affirmed.