### LEWIS ELLINGTON v. GREAT NORTHERN RAILWAY COMPANY.[1]

July 1, 1904.

Nos. 13,937—(145).

**Negligence—Proximate Cause of Death—Omission to Charge Jury.**

Action to recover for the death of plaintiff's intestate, a fireman, who fell from his engine and was killed by reason of an alleged defect in the running board thereon. *Held* that:

1. The verdict to the effect that the defendant was negligent in permitting the running board to become and remain in an unsafe condition, and that such negligence was the proximate cause of the death of the intestate, is sustained by the evidence.

2. The evidence does not show, as a matter of law, that the deceased was guilty of contributory negligence, or that he assumed the risk, or that he was disobeying orders when he went upon the running board.

3. As a general rule, the omission to charge the jury upon a particular point is not error, unless the court is asked so to do. Robertson v. Burton, 88 Minn. 151, distinguished.

Appeal by defendant from an order of the district court for Polk county, Watts, J., denying a motion for judgment notwithstanding the verdict or for a new trial. Affirmed.

*M. L. Countryman* and *A. C. Wilkinson,* for appellant.
*Steenerson & Loring* and *W. E. Dodge,* for respondent.

[1] Reported in 100 N. W. 218.

START, C. J.

Action to recover damages for the death of the plaintiff's intestate, caused by the alleged negligence of the defendant. Verdict for the plaintiff for the sum of $5,000, and the defendant appealed from an order denying its motion for judgment notwithstanding the verdict, or for a new trial.

The deceased was at the time of his death an employee of defendant in the capacity of a fireman on a freight engine. On June 13, 1903, he fell from his engine and was killed while the train was crossing a bridge over the Mississippi river at Bemidji, this state. It is alleged that the cause of his fall was a loose joint in the running board on the left side of the engine, occasioned by the defendant negligently permitting the bolts therein to be lost out, so that the board was unsupported at the joint, and, further, that the deceased, while in the discharge of his duties, went out on the running board while the train was in motion, and, by reason of the defective joint, slipped, stumbled, and was thrown from the train and killed. The defendant claimed that there was no defect or loose joint in the running board, that the deceased was not in the proper performance of his duties at the time he fell, and that he was guilty of contributory negligence and assumed the risk.

1. The first question to be considered is whether the evidence was sufficient to sustain the finding of the jury to the effect that the defendant was guilty of negligence which was the proximate cause of the death of the deceased. It is the claim of the defendant that it was not, for the reasons that (a) there was no evidence that any defect existed in the running board at the time of the accident; (b) there was no evidence that the alleged defect in the running board caused the fall and death of the deceased; and, further, that the evidence leaves the cause of his death a mere matter of conjecture. There was evidence on behalf of the plaintiff tending to show that the running board was defective, substantially as alleged, some four weeks before the accident, and also three or four days before the accident, and that on the next day after the accident it was in a like defective condition. The evidence as to the accident tends to show that the board was defective at the time of the accident. It is admitted by the defendant that the running board was out of repair the day before the accident, but it claims that the evidence is conclusive that it was thoroughly repaired that

day, and that such was its condition when the engine left the round-house on the day of the accident. Such repairs were testified to by the man who made them, and he was corroborated by the record of the repairs kept in the roundhouse. ·His testimony and the record were not directly contradicted. Clearly, the evidence was not conclusive. It was a fair question for the jury whether the running board was defective at the time of the accident, and whether the defect had existed for a sufficient length of time to charge the defendant with notice of it. The jury might well have concluded that, if the repairs were properly made, as claimed, the running board would not be in a similar defective condition at the time of the accident, as well as within twenty-four hours after it.

The evidence as to the cause of the accident is largely circumstantial. The evidence tends to show that the running board was in two pieces. One of them was three or four feet long and three feet wide, running from the cab window toward the boiler, where it was joined to a narrower and longer piece. There was a handhold or rail fastened to the engine at a convenient height above the board, but there was a break in the rail at the joint where the two pieces of the running board came together; the rail above the short piece being about six inches higher than the one above the other piece. There was also evidence tending to show that, if a person happened to step on the end of the narrow board at the joint, it would spring down by reason of the alleged defect. An eyewitness to the accident testified as follows:

> Q. You saw a man come out of the door, you say. How did it look to you after he started to come out of the door? A. He made one or two steps; then broke right down there. Q. What did he do before he went head first? A. Just made one or two steps before he fell. Q. 'Then what? A. Then went down a little bit; then went down head first.

A second eyewitness testified:

> I saw a man come out of the cab, took a step or two, and acted as though he kind of lost his balance someway, and plunged down off into the river. It looked to me as though he struck against the end of those piers on the bridge on the east end.

* * * When he came out he took a step, and it seems as though he went kind of down, and acted as though he wanted to make a reach for something, lost his hold, and went head first right off. He didn't make more than two steps, I am sure, and I am not positive whether one or two steps.

This evidence, in connection with the evidence to the effect that the running board was defective both before and after the accident, indicates quite clearly that the joint in the running board was loose at the time of the accident, and that the deceased stepped upon it, when the end of one of the pieces of the board sprung down, causing him to lose his balance, stumble, and fall from the engine to his death. If the jury gave credence to this evidence, they were justified in concluding that the running board was defective as alleged, and that such defect was the proximate cause of the death of the deceased, for such evidence does not leave the cause of his death a mere matter of conjecture.

2. The defendant further claims that the deceased was guilty of contributory negligence, and that he assumed the risks. Little need be said on the question of the assumption of the risks. The question was submitted to the jury by giving the defendant's requested instruction on the subject, which was quite as favorable to the defendant as it was entitled to have it. While it may be fairly inferred from the evidence that the deceased, in the discharge of his duties as fireman, must have passed along the running board before the accident, yet it does not follow that he must necessarily have discovered the defect, and appreciated the danger of walking upon the board in its defective condition. The duty of inspection did not rest upon him, and he might have repeatedly passed along the board, and not discovered the defect, unless he happened to step on the loose joint. Whether he assumed the risks was a question of fact.

Again, the defendant urges that the deceased was disobeying orders when he went upon the running board. The evidence upon which this claim is based is the testimony of the engineer to the effect that deceased reported to him, as the train approached the bridge where the accident occurred, that the classification lamp on the side of the engine—that is, a lamp which was kept lighted to show that the train was an extra—was not burning right, and that he replied, "Let it go," or, "Better

let it go." The matter was submitted to the jury, who specially found that it was not established by the preponderance of the evidence that the engineer made the statement claimed to the deceased. This was a question of fact, and the finding is sustained by the evidence. In view of this special finding, the alleged error of the court in refusing to give the defendant's third request, to the effect that if the deceased went upon the running board to fix the lamp, contrary to the instructions of the engineer, the plaintiff cannot recover, was harmless error.

It is also claimed that the deceased was guilty of contributory negligence, as a matter of law, in not taking hold of the hand rail when he went upon the running board while the train was moving. Whether he did or did not take hold of the rail was an open question, under the evidence. But the defendant requested the trial court to instruct the jury that, if the deceased failed to take hold of the hand rail when he attempted to walk on the running board, it would amount to contributory negligence, and the plaintiff could not recover. This was refused. Hence, if it was negligence, as a matter of law, for the deceased to go upon the running board, under the circumstances disclosed by the evidence, without taking hold of the rail, then the refusal to give the instruction was error. It is not difficult to conceive of conditions which would make the act of a fireman in walking upon the running board of an engine in motion, without taking hold of the hand rail, negligence, as a matter of law. This, however, is not such a case, in view of the particular facts of this case—such as the width of the part of the board upon which the deceased stepped, the fact that he had taken only one or two steps from the cab window when he came upon the joint, and that there was a break in the hand rail. His alleged negligence was a question of fact, under the evidence, and the requested instruction was rightly denied. The defendant complains that the trial court did not instruct the jury on the subject of the alleged contributory negligence of the deceased, nor as to the probability that the accident was due to some other cause than the loose joint in the running board. No proper requests for such instructions were made by defendant. As a general rule, the omission to charge the jury upon a particular point is not error unless the court is asked so to do on the trial. Dunnell, Pr. § 1120. This case falls within the general rule.

The case of Robertson v. Burton, 88 Minn. 151, 92 N. W. 538, is not here in point, nor is it inconsistent with the rule stated. In that case the trial court submitted to the jury certain of the issues, but omitted a material question of fact, upon which the defendant relied, and instructed the jury to the effect that the issues submitted were the only ones for them to consider, that the plaintiff was entitled to a verdict for some amount, and that the only thing they had to do was to ascertain the amount. It was held error to thus take the question from the jury and instruct them to return a verdict for the plaintiff, and that it was not necessary for the defendant to call the attention of the court to such omission. Obviously the holding was correct, for what the court, in effect, did, was to direct a verdict for the plaintiff, thereby ruling that the omitted issue was immaterial. The syllabus to this case should be read in connection with the opinion.

The only other assignment of error meriting special consideration is to the effect that the court erred in permitting a boy nine years old to testify in the case, for the reason that he was incompetent. The question of the competency of the witness was for the trial court, and its decision thereon cannot be reversed unless there was a clear abuse of its discretion. State v. Levy, 23 Minn. 104. It was not error to receive the testimony of the boy.

Order affirmed.