**STATE of Minnesota, Respondent,**

v.

**Arthur KOST, Appellant.**

**Nos. 48926, 47719.**

Supreme Court of Minnesota.

March 2, 1979.

Rehearing Denied May 1, 1979.

Meshbesher, Singer & Spence and Carol M. Grant, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., William B. Randall, County Atty., Steven C. DeCoster, Asst. County Atty., St. Paul, for respondent.

PER CURIAM.

Defendant was found guilty by a district court jury of two counts of kidnapping and one count of aggravated assault and was sentenced by the trial court on one of the kidnapping convictions to a maximum prison term of 40 years. Issues raised by defendant on this combined appeal from judgment of conviction and from the order denying him a postconviction hearing are: (1) whether the evidence of defendant's guilt was legally insufficient, (2) whether the trial court erred in permitting the prosecutor to cross-examine one of the state's witnesses, (3) whether the trial court erred in excluding certain testimony offered by defendant, (4) whether the prosecutor committed prejudicial misconduct in closing argument, and (5) whether the court erred in denying defendant a hearing on his postconviction petition. We affirm.

The victim in this case was a young St. Paul man, Richard Peglow, who with at least two others tried to rob some people who had arranged to buy a large amount of marijuana. The robbery was unsuccessful, and it was the state's contention at defendant's trial that defendant and one Tom Munoz, two of the buyers, punished Peglow by abducting him, torturing him, and killing him and that they then buried the body somewhere north of the Twin Cities, possibly in the Forest Lake area, which is where defendant is from originally. Both Peglow's father and girl friend testified that they had not heard from him or seen him since the date of the suspected killing, and there was other strong evidence that he was murdered and buried. Nonetheless, because Peglow's body was never found, the state did not attempt to prosecute defendant for murder.

1. The first issue raised by defendant on this appeal is whether the evidence was legally insufficient. We hold that it was sufficient.

There were three key witnesses against defendant. The first of these, one Gary Peterson, identified defendant and Munoz as being among the buyers who went to make the marijuana purchase on the evening in question. His testimony also linked defendant and Munoz, along with Mark Berry, with the abduction of Peglow moments after the robbery attempt failed.

The second witness, Jerry Lee Pieper, testified that defendant, Munoz, Berry, and Peglow came to his house and that he observed defendant and Munoz, but not Berry, beat Peglow severely and heard defendant threaten to kill him.

The third key witness, Ronald Winner, testified that he observed Peglow, apparently dead, in Munoz's camper and that he provided Munoz and defendant with an automobile for use in disposing of the body.

■ Contrary to what defendant argues, Pieper and Winner were not accomplices as a matter of law, and the question of whether they were accomplices was properly submitted to the jury. See, *State v. Houle,* 257 N.W.2d 320 (Minn.1977); *State v. Swyningan,* 304 Minn. 552, 229 N.W.2d 29 (1975). Even if they were accomplices so that corroboration of their testimony was required by Minn.St. 634.04, we hold that there was sufficient corroboration.

2. The second issue relates to whether the trial court erred in permitting the prosecutor to cross-examine Pieper, who was a prosecution witness, when Pieper claimed a lack of knowledge.

Rule 607, Rules of Evidence, permits a party to impeach his own witness with any prior inconsistent statements even if there is no surprise. However, this case was tried before the Rules of Evidence became effective. Therefore, the "surprise doctrine" was still in effect and the trial court could permit the prosecutor to cross-examine Pieper only if there was surprise. The trial court did find that the prosecutor was surprised and that the prosecutor accordingly should be permitted to cross-examine Pieper.

■ Once the prosecutor began to cross-examine Pieper, he found that it was not really necessary to introduce Pieper's prior statement because Pieper changed his mind and became a cooperative witness, testifying as the prosecutor had expected him to do. Thus, this is not a case raising the issue of whether a prior inconsistent statement used to impeach a witness may be used substantively. See, *State v. Dexter,* 269 N.W.2d 721 (Minn.1978).

■ 3. The third issue is whether the trial court erroneously excluded evidence which defendant sought to introduce that two people had seen Peglow alive and well a week or two after the alleged offenses. We hold that the court did not abuse its discretion in excluding this evidence. It is true that we generally have indicated that eyewitness identification testimony should be admitted even if it is less than positive. However, the proposed evidence had very little probative value [1] and carried a strong potential for misleading and confusing the jury. Further, the defense's theory of the case was not that Peglow was not abducted and beaten but that Winner and Pieper, not defendant, did it. In fact, the testimony of several of the defense witnesses supported the state's contention that Peglow was abducted and beaten by someone. Under the circumstances, we hold that the trial court did not abuse its discretion in excluding the proposed testimony.

■ 4. Defendant's fourth contention is that the prosecutor committed prejudicial misconduct in closing argument. While the prosecutor's closing argument was not a model one, we disagree with defendant's contention that he overstepped the bounds of propriety to such an extent as to require a new trial. We also note that defense counsel was aggressive in responding to the prosecutor's closing argument. Further, although defense counsel objected at least twice to specific aspects of the prosecutor's argument, he did not object to all of the alleged improprieties, and, most importantly, in a statement made with respect to what he apparently considered the most serious impropriety, defense counsel specifically informed the court that defendant did not want a mistrial or cautionary instruction. Under all the circumstances, we hold that a reversal on this ground is unwarranted.

1. The witnesses did not know Peglow but had merely seen his picture in a newspaper in connection with a report of his disappearance. One of the two witnesses apparently was dead and therefore was not available for cross-examination; the other could only say that the man he saw looked somewhat like the picture of Peglow.

5. The final issue raised by defendant relates to the denial of a hearing on his petition for postconviction relief, a petition which was based on a claim of newly discovered evidence. The prosecutor moved to dismiss on the ground that the evidence was not newly discovered evidence because it had been contained in a police report to which defense counsel had been given access before trial. Defense counsel representing defendant in the postconviction proceeding apparently did not deny this. Under the circumstances, the district court properly dismissed the petition without a hearing.

Affirmed.