**STATE of Minnesota, Respondent,**

v.

**James Edward CERMAK, Appellant.**

No. C0–82–522.

Supreme Court of Minnesota.

May 18, 1984.

C. Paul Jones, State Public Defender, Mary C. Cade, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Kathleen Morris, Scott County Atty., Shakopee, for respondent.

KELLEY, Justice.

Appellant James Edward Cermak was convicted of 30 counts of criminal sexual conduct.[1] He seeks a new trial, claiming the trial court prejudicially erred in denying his motion to remove the designated judge and in determining child witnesses were competent to testify; that he was denied effective assistance of counsel of his choice; that there was prosecutorial misconduct; that the evidence was insufficient to support the jury's verdict; and that the trial court abused its discretion by ordering 11 consecutive sentences totalling 480 months of incarceration. We affirm the convictions and sentences on the first-degree criminal sexual conduct charges and

---

1. Seven complaints alleged 14 counts of criminal sexual conduct in the first degree, Minn. Stat. § 609.342(a) and (c) (1982), 12 counts of criminal sexual conduct in the second degree, Minn.Stat. § 609.343(a) (1982), and 4 counts of promoting minors to engage in obscene works, Minn.Stat. § 617.246, subd. 2 (1982).

one second-degree criminal sexual conduct charge but vacate the 11 other convictions for second-degree criminal sexual conduct.

1. Complaints charging appellant with the crimes were filed in Scott County during August and September 1981. On September 2, 1981, venue was changed from Scott to Goodhue County. On September 10, 1981, appellant made his first appearance in district court, and an omnibus hearing was held on the same day. Trial was set to commence October 26, 1981. On October 21, 1981, appellant filed a notice to remove the trial judge based upon Minn. Stat. § 542.16 (1982). The trial judge previously assigned to the case refused to remove himself. Appellant claims this refusal, after a timely motion to remove had been filed under Minn.Stat. § 542.16, subd. 1 (1982),[2] was reversible error because the filing of the notice to remove deprived the designated trial judge of jurisdiction, and thus his actions taken after the filing were void. Respondent claims, and the trial court held, that since section 542.16, subd. 1 conflicts with Minn.R.Crim.P. 24.03, subd. 4,[3] the procedural rule prevails over the statute. The rule provides that the judge presiding over the venue change motion shall preside at trial unless the Supreme Court orders otherwise. We agree with respondent.

 The proper remedy to pursue when a motion to remove has been denied is to seek a writ of prohibition. *See, e.g., State v. Ketterer,* 244 Minn. 127, 69 N.W.2d 115 (1955). Appellant sought such a writ in this court. It was denied on October 23, 1981. Appellant contends *State v. Helenbolt,* 334 N.W.2d 400 (Minn. 1983), holds that denial of the writ does not bar raising the issue on appeal. *Helenbolt* does not stand for the proposition upon which appellant relies. Furthermore, the enabling legislation for the rules of criminal procedure clearly provides that the rules govern as to matters of procedure, notwithstanding a conflicting statute.[4] Appellant claims the rules should not govern because when adopting Minn.R.Crim.P. 24.-03, subd. 4 this court did not specify that it modified section 542.16, subd. 1. Appellant's argument has no merit. He has sought and been denied the proper remedy—a writ of prohibition. In matters of procedure rather than of substance, the Rules of Criminal Procedure take precedence over statutes to the extent there is any inconsistency. *State v. Keith,* 325 N.W.2d 641, 642 (Minn.1982). The trial court had jurisdiction and properly denied the motion to remove.

 2. At the trial, three children, ages 10, 6 and 5, were permitted to testify. Appellant argues each of these children fails to meet at least one prong of a two-part test for witness competency. That test requires a witness to understand the

---

**2.** Minn.Stat. § 542.16, subd. 1 (1982) provides insofar as applicable:

Any party, or his attorney, to a cause pending in a district court * * * may make and file with the clerk of the court in which the action is pending and serve on the opposite party a notice to remove. * * * In criminal actions the notice to remove shall be made and filed with the clerk by the defendant, or his attorney, not less than two days before the expiration of the time allowed him by law to prepare for trial and in any of those cases the presiding judge shall be incapacitated to try the cause. In criminal cases, the chief judge, for the purpose of securing a speedy trial, may in his discretion change the place of trial to another county.

**3.** Minn.R.Crim.P. 24.03, subd. 4, insofar as applicable to this issue, reads: "Unless the Supreme Court orders otherwise, the case shall be tried before the judge who ordered the change of venue."

**4.** Minn.Stat. § 480.059, subd. 7 (1982), insofar as applicable, reads as follows:

Present statutes relating to the pleadings, practice, procedure, and the forms thereof in criminal actions shall be effective until modified or superseded by court rule. If a rule is promulgated pursuant to this section which is in conflict with a statute, the statute shall thereafter be of no force and effect. Notwithstanding any rule, however, the following statutes remain in full force and effect:

\* \* \* \* \* \*

Whenever, pursuant to this section, the court adopts a rule which conflicts, modifies, or supersedes a statute not enumerated above it shall indicate the statute in the order adopting the rule.

obligation of taking an oath and to be capable of correctly narrating the facts to which his or her testimony relates. *State ex rel. Dugal v. Tahash*, 278 Minn. 175, 177–78, 153 N.W.2d 232, 234 (1967). The obligation of the oath has been interpreted as primarily an understanding of the necessity to tell the truth. *State v. Levy*, 23 Minn. 104 (1876). Determination of witness competency rests in the discretion of the trial judge. The trial judge's finding of competency will not be reversed unless it is a clear abuse of discretion. *Ellington v. Great Northern Railway Co.*, 92 Minn. 470, 475, 100 N.W. 218, 220 (1904); *Levy*, 23 Minn. at 108. Under Minnesota's witness competency statute, the presumption of incompetency for children under the age of 10 is inapplicable to victim testimony in cases of criminal sexual abuse so long as the child can "describe or relate in language appropriate for a child of that age the events or facts respecting which the child is examined." Minn.Stat. § 595.02(6) (1982).

■ Our examination of the in camera record and the trial testimony of each of these children sustains the trial court's determination that each understood the difference between truth and falsehood and could narrate effectively. We conclude there was no abuse of trial court discretion in finding them competent to testify.

3. Appellant next contends he was denied effective assistance of his retained counsel. Specifically, his contention is that his counsel (a) failed to object to certain evidence; (b) waived appellant's right to be present at an in camera hearing to determine competency of some child witnesses; (c) cross-examined a state's witness in a manner which led to admission of damaging evidence; and (d) failed to object to improper verdict forms.[5]

■ (a) While in jail, appellant asked to talk with the jail supervisor, Kenneth Reit-meier. In the conversation appellant made several inculpatory statements which Reitmeier recorded in his report. Not only did appellant's lawyer fail to object to the admission of the report, he later read it into evidence on cross-examination. The record reveals defense counsel discussed the admissibility of the "Reitmeier" report in chambers with appellant present. Appellant decided to waive a *Rasmussen* hearing on its admissibility. Although the record does not clearly reveal why defense counsel did not challenge the report, it appears that as a tactical matter defense counsel did not want to attract undue attention to it because it might be found admissible as a voluntary statement in any event. Moreover, portions of the report were exculpatory in that the appellant had told Reitmeier that he felt that he had been coerced by his brother into perpetrating the acts which formed the basis of the alleged crimes. Counsel might well have thought some sympathy for appellant might be generated by reading the entire report into the record.

■ Appellant further claims his counsel failed to object to the characterization of a photographic array as "mug shots" by the prosecutor, some witnesses and even by the trial judge. While it might be risky for the prosecutor to offer "mug shot" evidence, and while trial participants should not refer to such photographic arrays as "mug shots," absent any inference from the photographs that the accused had a prior criminal record, the admission of the photographs or reference to them is not reversible error. *State v. Seefeldt*, 292 N.W.2d 558 (Minn.1980); *State v. Serna*, 290 N.W.2d 446 (Minn.1980). Here, the words "mug shots" were only used a few times in a trial lasting 11 days, and nobody overused or overemphasized the phrase. Nor was there any inference directly from the photographs indicating appellant had a prior police record. Thus, even if there were error, it was harmless considering the

---

5. Generally, an appeal from a conviction is not the most appropriate way to raise issues of trial counsel's ineffective representation. This is true because we do not have the benefit of all the facts regarding why defense counsel acted as he did. *See, e.g., State v. Zernechel*, 304 N.W.2d 365, 367 (Minn.1981). Appellant, on this appeal, represented as he is by the state public defender, is obviously aware of this. Nevertheless, on this appeal he presses the issue.

cumulative evidence of guilt in this case. *See State v. Madison*, 281 Minn. 170, 160 N.W.2d 680 (1968), *cert. denied*, 393 U.S. 1102, 89 S.Ct. 904, 21 L.Ed.2d 796 (1969).

■ (b) Appellant further claims that his counsel waived his right to be present at an in camera competency hearing of some of the non-family child witnesses. The record shows the appellant was clearly informed by his privately-retained counsel and by the trial court of his constitutional right to remain at that in camera hearing, and he, with full knowledge, voluntarily waived the right. With respect to in camera hearings concerning the competency of other child witnesses, appellant exercised his constitutional right to be present.

■ (c) Appellant contends his privately-retained counsel failed to object to questions asked of Dr. Michael Wilcox, who had examined all but one of the child victims. We have carefully examined the record of Dr. Wilcox's testimony and can find no lack of effective representation by defense counsel. In cross-examining Montgomery Police Chief Vlasak, appellant's counsel did elicit his opinion that some of the children had been subjected to frequent sexual abuse. However, in the context of the entire trial, this did not amount to incompetent representation.

■ (d) Finally, appellant contends his counsel should have objected to improper verdict forms.[6] Although the forms used were improper, the use of this type of verdict form is not itself reversible error when accompanied by instructions which, when viewed in their entirety, are sufficient to impress upon the jury the proper burden of proof and presumption of innocence. *State v. Brouillette*, 286 N.W.2d 702 (Minn.1979), *aff'd sub nom., Brouillette v. Wood*, 636 F.2d 215 (8th Cir.1980)

(petition for federal habeas corpus denied), *cert. denied*, 450 U.S. 1044, 101 S.Ct. 1766, 68 L.Ed.2d 243 (1981).[7] The trial court in its instructions emphasized that the jury would have two forms for each count charged, one for "guilty" and the other for "not guilty." In addition, the jury received explicit instructions on the elements of each charge and was instructed that if the jury did not find each element proved beyond a reasonable doubt, it must find the defendant not guilty on the charge. Under these circumstances, failure to object to the forms by appellant's counsel does not form the basis for a new trial.

■ 4. Next, appellant alleges misconduct on the part of the prosecutor resulting in an unfair trial. The alleged misconduct includes her referring several times to a photographic array in evidence as "mug shots"; allegedly asking Dr. Wilcox his opinion on guilt; interjecting opinion on the veracity of witnesses and the guilt of the appellant in the final argument; and improperly discussing the prosecutor's burden of proving guilt beyond a reasonable doubt. Appellant's privately-retained counsel never objected to any of these alleged errors. Failure to object to any of the alleged errors forfeits the right to have those alleged errors considered on appeal. *State v. Tienter*, 338 N.W.2d 43, 44 (Minn. 1983); *State v. Kline*, 306 N.W.2d 132, 133 (Minn.1981); *State v. Kost*, 278 N.W.2d 46, 48 (Minn.1979). Moreover, we have examined the record and find the alleged errors to be either without merit or of such insignificance, considered in the light of the overwhelming evidence of guilt, that a new trial is not justified.

■ 5. Relying on *State v. Underwood*, 281 N.W.2d 337 (Minn.1979), appellant claims the cumulative effect of alleged

---

6. The verdict forms submitted to the jury stated: "We, the Jury impaneled and sworn to try the guilt or innocence of the above-named defendant * * *."

7. We also discussed this type of verdict form in *State v. Caldwell*, 322 N.W.2d 574 (Minn.1982). In that case, the trial court not only submitted the incorrect verdict form to the jury, it also

gave an instruction which may have misled the jury about the proper burden of proof and presumption of innocence. While we did not decide there whether the use of the incorrect verdict form would have itself been reversible error, we concluded that the cumulative effect of the instruction and other errors at trial warranted a reversal of appellant's conviction.

incompetence of counsel and prosecutorial misconduct requires reversal and a new trial. *Underwood* is distinguishable from the instant case in two respects. First, the nature of the error in *Underwood* was much·more egregious than in the instant case.[8] Second, there is in this case overwhelmingly physical evidence obtained from legal searches of appellant's car and house. In contrast, our reversal in *Underwood* was caused in part by the "closeness" of the case. 281 N.W.2d at 340. We find no merit to this claim.

6. Appellant was convicted on 11 charges of criminal sexual conduct in the first degree and 11 charges of criminal sexual conduct in the second degree arising out of the same conduct. He contends, and the state and this court agree, the 11 convictions for criminal sexual conduct in the second degree must be vacated. Minn. Stat. § 609.04 (1982). *See, e.g., State v. Harding,* 304 N.W.2d 14, 15 (Minn.1981); *State v. Hesse,* 281 N.W.2d 491, 493 (Minn. 1979); *State v. Sanders,* 281 N.W.2d 493, 494 (Minn.1979).

7. The appellant's contention that the evidence was insufficient to support the jury verdict is clearly without merit. Without detailing the voluminous and sordid testimony, suffice it to say the child victims have testified, and in some cases their testimony is corroborated by their parents. ·More importantly, photographs taken by appellant or his brother of the actual acts were in evidence. Other physical evidence obtained in warranted searches of appellant's house and car and of John Cermak's house supports the verdict. Finally, the prosecution produced medical testimony of objective physical signs of sexual abuse of the child victims. *See, e.g., State v. Lehmann,* 331 N.W.2d 759, 760 (Minn.1983).

8. Finally, appellant challenges the trial court's sentencing. He was sentenced on 13 convictions for criminal sexual conduct

in the first degree, a severity level VIII offense under the Sentencing Guidelines. With appellant's criminal history score (zero), the presumptive sentence is 43 months executed (41–45 months) for each. Appellant was also sentenced on one of the convictions for criminal sexual conduct in the second degree. This is a severity level VI offense. With appellant's criminal history score (zero), the presumptive sentence is 21 months stayed.

The court sentenced appellant to 45 months consecutively for each of six first-degree criminal sexual conduct convictions involving his own three children, two children of his brother, and one other child. The court then imposed five 42-month consecutive sentences upon appellant for other first degree criminal sexual conduct convictions involving two additional children and the one other child for which a 45-month sentence had already been imposed for a separate incident. The court imposed two concurrent 45-month sentences for the remaining first-degree convictions involving one previously mentioned victim. Finally, a sentence of 21 months stayed, subject to 10 years probation, to run concurrently to all other sentences was imposed as to one conviction of criminal sexual conduct in the second degree involving a ninth child-victim. These sentences were aggregated into an executed prison term of 480 months, the maximum consecutive sentence under state law. Minn.Stat. § 609.15, subd. 2 (1982).

Appellant alleges the maximum number of consecutive sentences of first-degree criminal sexual conduct allowed without a consecutive service departure is eight—the number of separate victims of first-degree criminal sexual conduct. He argues the consecutive sentences beyond the first eight are departures under the Sentencing Guidelines. Appellant correctly contends the aggregated sentence violates the guide-

---

**8.** In *State v. Underwood,* 281 N.W.2d 337 (Minn. 1979), the trial judge improperly excluded impeachment of the victim-witness of an aggravated assault; a state's witness made impermissible comments on defendant's exercise of his

constitutional rights; other-crimes evidence in violation of Minn.R.Evid. 404 was admitted; and the trial court singled out defendant in its jury instruction on the credibility of witnesses.

lines. The maximum number of consecutive sentences allowed without a departure is one per victim in criminal sexual conduct cases of multiple current convictions involving different victims. Sentencing Guidelines II.F.2 (1982).[9] The maximum aggregated consecutive sentence within the guidelines would be 360 months (8 convictions involving separate victims × 45 months served consecutively). The court did not depart by sentencing consecutively on eight of the first-degree criminal sexual conduct convictions. The remaining convictions, however, would require concurrent sentencing unless written reasons for departure were given.

■ The sentencing court did not believe its consecutive sentencing was a departure. Indeed, the sentencing court's main explanation for the aggregated 40-year sentence was the continuing danger to the public of appellant's criminal behavior.[10] We have previously held that the sentencing court may not consider future likelihood of criminal behavior to justify a durational departure. *State v. Partlow*, 321 N.W.2d 886, 887 (Minn.1982). Future behavior likewise does not justify a consecutive service departure.

We affirm the sentence imposed in the instant case, nonetheless, based upon the aggravating circumstances justifying the three consecutive service departures. Several aggravating and mitigating factors are listed in Minnesota Sentencing Guidelines and Commentary II.D. (1982). The factors used in analyzing durational or consecutive service departures generally focus on the defendant's conduct, in particular, whether defendant's conduct was significantly more or less egregious than that typically involved in the commission of the crime in question. Although amendments to the Sentencing Guidelines in November 1983 and a subsequent case have resolved the sentencing issue appellant raises, the sentencing court acted prior to, and without the guidance of, either of these pronouncements. Comment II.F.06 of the Sentencing Guidelines was adopted effective November 1, 1983 to clarify those situations in which consecutive sentencing for multiple current offenses against a single victim are departures under the guidelines. This comment has resolved the instant issue:

> **II.F.06.** The criterion that crimes must be against different persons for permissive consecutive sentencing is designed to exclude consecutive sentences in two types of situations. One type involves multiple offenses against a victim in a single behavioral incident such as burglary with a dangerous weapon and aggravated robbery with bodily harm. The requirement of different victims is also intended to exclude consecutive sentences in domestic abuse and child abuse situations when there are multiple incidents perpetrated against a victim over time. Assault, criminal sexual conduct, intrafamilial sexual abuse, and incest are the conviction offenses most frequently found in domestic abuse and child abuse

---

**9.** Sentencing Guidelines II.F. (1982) provides in pertinent part as follows:

> When an offender is convicted of multiple current offenses, * * * concurrent sentences shall be given in all cases not covered below. The most severe offense among multiple current offenses determines the appropriate offense severity level for purposes of determining the presumptive guideline sentence.
>
> Consecutive sentences may be given only in the following cases:
>
> * * * * * *
>
> 2. When the offender is convicted of multiple current felony convictions for crimes against different persons, and when the sentence for the most severe current conviction is executed according to the guidelines; or
>
> * * * * * *

> The use of consecutive sentences in any other case constitutes a departure from the guidelines and requires written reasons pursuant to Minn.Stat., sec. 244.10, subd. 2 and section E of these guidelines.

**10.** The court at sentencing explained its lengthy sentence as follows:

> [M]y main consideration in imposing the sentence that I intend to impose is my firm belief that you are a continuing danger to the public and that danger reaches well beyond the foreseeable future. It's my considered judgment that the public must be protected from you, and further that my duty as a Judge requires that I do all in my power to extend the protection that I can to them.

cases. Multiple incidents against a victim typifies these types of situations. * *

* * * * * *

(Added effective November 1, 1983).

We applied Sentencing Guideline II.F.2 and Comment II.F.06 in *State v. Wellman*, 341 N.W.2d 561 (Minn.1983). *See also State v. Peterson*, 329 N.W.2d 58, 60 n. 1 (Minn. 1983); *State v. Kennedy*, 342 N.W.2d 631 (Minn.1984). In *Wellman* the defendant was convicted of three counts of assault upon the same victim at different times. *Wellman*, 341 N.W.2d at 561. The sentencing court departed durationally and with respect to consecutive service. While we concluded the consecutive service imposed for multiple convictions involving the same victim was a departure under the guidelines, we held both durational and consecutive sentence departures were justified in *Wellman* because of the severe aggravating circumstances involved.[11] *Id.* at 566. If the sentencing court in this case had the benefit of *Wellman* and Sentencing Guidelines Comment II.F.06, it most certainly could have justified a consecutive service departure based upon the aggravating circumstances in the record. We thus affirm the sentencing because of the evidence in the record which justifies the departures.

The only sentencings constituting a departure are the three multiple consecutive sentences involving two of the victims. With respect to the first victim, appellant used a loaded BB-gun to coerce the 7-year-old victim to submit to anal penetration on one of the two occasions resulting in conviction. The second time appellant also anally penetrated the victim, and on both occasions appellant took photographs which the victim identified at trial. Furthermore, appellant was in a position of authority on both occasions, supervising the victim on swimming trips sanctioned by

the victim's father. *See* Minn.Stat. § 609.-341, subd. 10 (1982).

The other two consecutive service departures involve a victim who was anally penetrated and told to perform fellatio on appellant on several occasions at motels in New Prague and Shakopee and who was once anally penetrated by appellant's brother. This victim was 11 years old, and on many of those occasions was told to pose for nude photographs and photographs while engaged in fellatio. In addition, at trial this victim said that appellant had threatened physical harm if the victim told anyone of their sexual encounters. The victim testified that appellant told him "if [you tell] anyone or anything * * * when he [appellant] got out or if he got out of jail there wouldn't be a big enough rock for me to light under."

■ The vulnerability due to the age of these two victims and the appellant's position of authority over them, combined with the cruelty in use of threats of bodily harm to coerce them to submit to appellant's sexual abuse, and the photographs taken, constitute sufficient aggravating circumstances to warrant these three consecutive service departures. Although the age of the victims alone is not sufficient grounds for departure, considered in connection with other facts the conduct of appellant underlying the offenses was sufficiently different in degree from the "typical" conduct during such offenses to justify the three consecutive service departures. *State v. Luna*, 320 N.W.2d 87 (Minn.1982); *State v. Johnson*, 327 N.W.2d 580 (Minn. 1982); *State v. Cermak*, 344 N.W.2d 833 (Minn.1984). We therefore affirm the aggregated 480-month sentence.

The convictions and sentences on the first-degree sexual conduct counts and one second-degree sexual conduct count are affirmed. The convictions for second-degree criminal sexual conduct are vacated.

**11.** The aggravating factors involved extreme cruelty and abuse resulting on three different occasions in the hitting and breaking of a small child's nose, the twisting and breaking of his arm, and the twisting and breaking of his leg. *State v. Wellman*, 341 N.W.2d 561, 566 (Minn. 1983).

WAHL, Justice (concurring specially).

I agree that the trial court, acting pursuant to this court's denial of prohibition, had jurisdiction to try this case. Absent a showing of judicial prejudice on the record, and there is no such showing here, reversal on this ground is unwarranted. I must express a deep concern, however, if, in this and other criminal cases, a defendant's longstanding right under Minn.Stat. § 542.-16 (1982) to the removal of one judge is held to be of no avail if that defendant has been granted a change of venue. I do not believe it was the intent of the committee that drafted the Rules of Criminal Procedure or of this court in promulgating those rules to force a criminal defendant to choose between an impartial jury and an impartial judge.[1] Such a choice is inimical to our concept of justice and fundamental fairness.

We have long endeavored to eliminate bias as a factor in the trial of criminal cases. We have erected strong safeguards, by statute, by case law or by court rule, against two distinct forms of bias, community bias and judicial bias. To eliminate community bias and insure a fair and impartial jury, we have found it necessary in appropriate cases to allow a change of venue, which is a transfer of the case to another county. Rule 24.03, Minn.R. Crim.P., so provides, and this case was so transferred. To eliminate perceived judicial bias, the legislature, by Laws 1895, c. 306, entitled "An act to enable parties to actions in the district court in this state to secure an impartial judge to hear and preside at the trial of said actions," provided that a defendant in a criminal case would get one change of judge as a matter of right. *State v. Gardner*, 88 Minn. 130, 92 N.W. 529 (1902). As the law has developed, the defendant and the state may re-

move one judge each without showing a bias or prejudice simply by filing a timely notice.[2] Minn.Stat. § 542.16; *State v. Kraska*, 294 Minn. 540, 201 N.W.2d 742 (1972). Notice for the defendant must be filed with the clerk of court not less than 2 days before the date set for trial. *Id.*

The date for trial in this case was set for October 26, 1981. Appellant filed his notice of removal on October 21, 1981, then sought a writ of prohibition in this court when the motion for removal was denied. We denied the writ peremptorily on October 23, 1981. We should, I believe, in light of longstanding legislative policy and our own cases, grant such a writ except where the notice of removal has been untimely filed. The defendant does have the option of filing the statutory notice of removal after a judge has been assigned to hear a motion for a change of venue but before that motion has been heard. Nevertheless, it is of utmost and continuing importance that our judicial system both provide, and be perceived as providing, fair and impartial justice for all.

---

neither protect the right which is provided by statute nor mention in the Comments to Rule 24.03, subd. 4, that they have in some cases removed that right.

1. As appellant points out, the order of this court promulgating the Rules of Criminal Procedure does not list, as it is required to do by Minn. Stat. § 480.059, subd. 7 (1982), Rule 24.03, subd. 4, as conflicting with, modifying or superseding section 542.16. It is interesting to note also that, while the right of a party to a civil suit to remove one judge as a matter of right is protected by Minn.R.Civ.P. 63.03, the criminal rules

2. A party must make an affirmative showing of prejudice for a subsequent disqualification. Minn.Stat. § 542.16, subd. 2 (1982).