**STATE of Minnesota, Respondent,**

v.

**Roger Arthur THOMPSON, Appellant.**

**No. C1–87–2475.**

Court of Appeals of Minnesota.

Aug. 2, 1988.

Review Granted Aug. 31, 1988.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Bruce F. Gross, Cottonwood Co. Atty., Windom, for respondent.

C. Paul Jones, State Public Defender, Susan K. Maki, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by FOLEY, P.J., and NIERENGARTEN and SCHULTZ,* JJ., without oral argument.

## OPINION

HAROLD W. SCHULTZ, Judge.

Appellant Roger Arthur Thompson was convicted by a district court jury of one count of theft in violation of Minn.Stat. § 609.52, subd. 2(1) (1986) (theft between $250 and $2500). On appeal, he seeks reversal of his conviction because (1) prosecution of his theft charge was not commenced within the three-year statute of limitations; (2) the trial court improperly admitted evidence seized during a warrantless search; (3) appellant was denied his right to be personally present during a hearing of his minor stepson's competency to be a witness; (4) the court improperly instructed the jury regarding appellant's right not to

testify when appellant did not personally request that instruction; and (5) the evidence was insufficient to sustain his conviction. We affirm.

## FACTS

Appellant's conviction arose from a theft occurring on November 7, 1983 after 9:00 p.m. in Windom, Minnesota, where a log splitter, valued at $1325, was stolen from Runnings store. Appellant's stepson, Shawn Thompson, testified that earlier that evening he accompanied appellant to Runnings store to purchase some items. Appellant asked the storekeeper what time the store closed and was informed the store closed at 9:00 p.m.

About 11:00 or 11:30 that night, appellant and Shawn drove back to Runnings store. According to Shawn, appellant told him to stand outside the truck and be on the lookout for cars. When appellant returned to the truck, he told Shawn to get in and not look back. Appellant then drove Shawn to appellant's mother's farm. Appellant left for approximately 10 to 20 minutes, picked Shawn up and took him home. The next day, Runnings store reported the theft of a log splitter to police.

Shawn testified that a few days later appellant took him out to an abandoned farm. In a barn, appellant uncovered a log splitter hidden under a plastic sheet and some hay. Shawn helped appellant split some logs, which they took to their home a few miles away. Appellant told Shawn that he would kill him if he told anyone about the log splitter.

Some time later, Shawn saw appellant dismantle the log splitter in the garage. Appellant hoisted up some parts into the garage's attic. The next day, Shawn and one of his cousins secretly saw appellant throw a beam and a splitting wedge into a creek. Welded onto both parts were serial numbers and manufacturer information.

No leads on the stolen log splitter occurred until nearly three years later. In the meantime, during the spring of 1986, appellant left Minnesota to look for work in

* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. 6, § 2.

South Dakota, Utah and Colorado. He testified he was gone approximately three months.

In the fall of 1986, a farmer reported to the sheriff that he had found a motor and pump buried on his land near the Thompson residence. The motor and pump were buried about 200 feet from the outbuildings of the Thompson house and about 120 feet from the property line.

On November 3, 1986, the sheriff investigated the site where the motor and pump were found. Because the Thompson residence was close by, he went there and talked with appellant's wife, who had separated from appellant a few months earlier. Because of a June 1986 protection order, appellant was barred from his former residence and lived elsewhere, while his wife continued to live in the house with Shawn and another son. Appellant's wife allowed the sheriff to search the garage where he found two tires and rims in the garage attic. Three days later, the sheriff talked to Shawn, who told him about a slide plate from a log splitter and showed him where it was in the garage.

The manager of Runnings store testified that his store carried only one type of log splitter, which was made by Stevens Manufacturing in Morton. Both the store manager and sheriff testified Stevens' log splitters were essentially handmade by one particular individual. The sheriff testified the motor and wheels he recovered were consistent with those parts used on Stevens' log splitters. In addition, the store manager testified the slide plate, mounting bracket and pump recovered were very similar to those used on the Stevens' machine.

Appellant was charged with the log splitter theft on December 10, 1986. Before his trial, a hearing was held to determine Shawn's competency as a witness. Although appellant's attorney was present at that hearing, appellant was not. Appellant did not request to be present, nor did he object to his absence.

Appellant chose not to testify at trial. The trial court instructed the jury regarding appellant's exercise of his right not to testify. The record does not reflect discussions between the trial court and counsel regarding proposed jury instructions, but appellant asserts he personally did not request the instruction.

On July 10, 1987, the jury found appellant guilty as charged. The court sentenced appellant to 19 months imprisonment and ordered him to pay $1120 restitution.

## ISSUES

1. Was appellant prosecuted within the time period proscribed by the statute of limitations?

2. Did the trial court properly admit evidence seized during a warrantless search?

3. Was appellant's absence from his stepson's competency hearing error?

4. Did the trial court err in instructing the jury on appellant's right not to testify when appellant did not personally request that instruction?

5. Was the evidence sufficient to sustain appellant's conviction?

## ANALYSIS

■ 1. The statute of limitations applicable in this case requires the complaint to be filed

> within three years after the commission of the offense; but the time during which the defendant shall not be an inhabitant of, or usually resident within, this state, shall not constitute any part of the limitations imposed by this section.

Minn.Stat. § 628.26(d) (1982). In *Kubus v. Swenson,* 242 Minn. 425, 65 N.W.2d 177, *cert. denied* 348 U.S. 877, 75 S.Ct. 114, 99 L.Ed. 690 (1954), the supreme court clarified:

> The tolling provision of § 628.26 is clear and unambiguous in providing that the statute shall not run during the absence of the defendant from the state.

*Id.* at 426, 65 N.W.2d at 178. In *State v. Lupino,* 268 Minn. 344, 129 N.W.2d 294 (1964), *cert. denied* 379 U.S. 978, 85 S.Ct. 681, 13 L.Ed.2d 569 (1965), the supreme court further explained:

[T]he language used in our statute [leads] us to the conclusion that a person who leaves the state and goes to another jurisdiction is not "an inhabitant of, or usually resident within, this state" within the meaning of these words as used in § 628.26 during the period of his absence * * *.

*Id.* at 347, 129 N.W.2d at 297.

Although the complaint charging appellant with the November 7, 1983 theft was filed on December 10, 1986, approximately one month after the three-year limitation period expired, appellant's absence from this state during the spring of 1986 extended the limitation period an additional three months to February 1987. Thus, the trial court determined the complaint was filed well before the extended deadline.

Appellant primarily argues we should interpret our limitation statute in accordance with the federal limitations statute providing "[n]o statute of limitations shall extend to any person fleeing from justice." 18 U.S.C.A. § 3290 (1985). Appellant contends since he was looking for work during his absence and not "fleeing from justice," our limitation period should have run while he was gone.

Appellant's argument is without merit because our statute is clear and does not impose any restriction on the reason for a defendant's absence. The trial court therefore properly determined appellant was prosecuted within the time period proscribed by the applicable statute of limitations.

■ 2. Appellant claims the trial court improperly admitted evidence seized during the warrantless search of the garage. In denying appellant's motion to suppress the tires, rims and slide plate recovered from the garage, the trial court stated in its omnibus order:

[A]t the time of seizure of these items, this property was under the exclusive control of the wife of Roger Thompson pursuant to a Domestic Abuse Protection Order dated June 23, 1986 which was effective for a period of one year and was issued by the County Court for Jackson County. Consent to a search was obtained from defendant's wife and defendant would therefore have no standing to contest such search and introduction of the evidence found in a trial.

We conclude the trial court properly admitted the evidence at issue. Appellant's wife's immediate and complete control of the premises shows her capacity to consent to the search. *Roberts v. United States,* 332 F.2d 892, 896–97 (8th Cir.1964), *cert. denied* 380 U.S. 980, 85 S.Ct. 1344, 14 L.Ed.2d 274 (1965); *see United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974) (permission to search may be obtained from party who possesses common authority over premises). Appellant contends his wife did not have common authority over the garage but our review of the domestic abuse order shows she was granted exclusive control over the entire premises, including the garage. Appellant also asserts his wife's consent was ineffective because he and his wife did not have an amicable relationship, but his position is not supported under Minnesota law and we decline to adopt it here.

■ 3. Appellant contends he was denied his right to be personally present during his minor stepson's competency hearing. In *Moll v. State,* 351 N.W.2d 639 (Minn.Ct.App.1984), however, this court concluded a "criminal defendant himself does not have the right to attend the chambers examination held to determine the competency of child witnesses." *Id.* at 644. Our reasoning reflected a concern that a defendant's presence may intimidate the child. *Id.* We further recognized that the form of inquiry in a competency hearing lies in the sound discretion of the trial court. *Id.*

Appellant argues our decision in *Moll* is contrary to *State v. Cermak,* 350 N.W.2d 328 (Minn.1984) where the supreme court discussed this issue when addressing appellant's argument that his counsel was incompetent. The *Cermak* court stated:

Appellant further claims that his counsel waived his right to be present at an in camera competency hearing of some of

the non-family child witnesses. The record shows the appellant was clearly informed by his privately-retained counsel and by the trial court of his constitutional right to remain at that in camera hearing, and he, with full knowledge, voluntarily waived the right. With respect to in camera hearings concerning the competency of other child witnesses, appellant exercised his constitutional right to be present.

*Id.* at 333. In *Moll,* however, we addressed the *Cermak* court's language here by stating:

We are not unmindful of *State v. Cermak,* 350 N.W.2d 328 (Minn.1984), in which the Supreme Court held that a valid waiver of such right as the defendant had to be present did not indicate incompetence of counsel. Inasmuch as the point discussed here was neither directly addressed by the court, nor apparently briefed by counsel, we regard the court's characterization of defendant's "constitutional right to be present" as dictum.

*Moll,* 351 N.W.2d at 644 n. 1.

Our decision in *Moll* is in accord with the recent decision of the United States Supreme Court in *Kentucky v. Stincer,* —— U.S. ——, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987). In *Stincer,* the Supreme Court held the exclusion of a defendant from a pretrial competency hearing involving young children was not constitutional error. The Court held that neither the sixth amendment confrontation clause nor a defendant's fourteenth amendment right to be present at the critical stages of a criminal proceeding were violated. *Id.* 107 S.Ct. at 2666–67. In *Stincer,* the defendant requested to be present at the competency hearing and objected to his exclusion from that hearing.

In this case, appellant neither requested to be present nor objected to his absence at the hearing. The record shows the trial court did not specifically exclude appellant from the hearing. Appellant's attorney was present at the hearing, a procedure strongly advocated in *Moll,* 351 N.W.2d at 643. Further, the defendant was present

in the courtroom with the full right of cross-examination. *See id.* at 644. Appellant's absence from his stepson's competency hearing was, therefore, not error.

4. The trial court instructed the jury that they should not draw any inference from defendant's failure to testify. 10 *Minnesota Practice,* CRIM.JIG 3.17 (1985). Appellant argues the trial court's failure to obtain appellant's express personal consent to the instruction constitutes reversible error. Appellant relies on the comment section to instruction 3.17, which provides:

This instruction should not be given without the clear consent and insistence of the *defendant himself.* If such an instruction is requested by counsel for the defendant, the judge should require the defendant himself to state on the record that he wishes to have such an instruction given. *State v. Rosen,* 280 Minn. 550, 158 N.W.2d 202 (1968).

*Id.* (emphasis added).

In *State v. Rosen,* 280 Minn. 550, 158 N.W.2d 202 (1968), however, the supreme court did not require the defendant himself to request the instruction. The *Rosen* court stated only that the instruction should not be given, "particularly in the absence of any request for such an instruction by the *attorney for defendant."* *Id.* (emphasis added) (citing *State v. Sandve,* 279 Minn. 229, 156 N.W.2d 230 (1967)); *see also State v. Larson,* 358 N.W.2d 668, 671 (Minn.1984) (trial court should generally "leave it up to the *defendant and his attorney* to decide whether they want such an instruction.") (emphasis added). Although case law does not require appellant to personally request the instruction, the trial court's decision to give the instruction is questionable absent some indication the instruction was requested by appellant's attorney. Here, the record is silent regarding the proposed jury instructions. We are certain, however, the jury verdict was not affected by the instruction in light of the evidence as disclosed by the record.

5. In reviewing a claim of insufficiency of the evidence, we are limited to ascertaining whether, given the facts

in the record and the legitimate inferences that can be drawn from those facts, a jury could reasonably conclude that the defendant was guilty of the offense charged. We cannot retry the facts, but may take the view of the evidence most favorable to the state and must assume that the jury believed the state's witnesses and disbelieved any contradictory evidence. If the jury, giving due regard to the presumption of innocence and to the state's burden of proving the defendant's guilt beyond a reasonable doubt, could reasonably have found the defendant guilty, that verdict will not be reversed.

*State v. Merrill,* 274 N.W.2d 99, 111 (Minn. 1978) (citations omitted).

█ Appellant primarily argues Shawn gave false testimony by making inconsistent statements regarding the items initially purchased at Runnings store; the hitch type and color of appellant's truck; the location of the log splitter at the store and after the theft; and the exact time the events occurred. In *State v. Hanson,* 286 Minn. 317, 176 N.W.2d 607 (1970), however, the supreme court observed:

Inconsistencies and conflicts of this type are typical of trials where the witnesses are trying to reenact events which occurred in a stressful situation. They are a sign of the fallibility of human perception—not proof that false testimony was given at the trial. In fact, if the testimony of every witness was inherently consistent and conformed perfectly with that of every other in a case such as this, one experienced in the assessment of testimony would be startled and, perhaps, suspicious.

*Id.* at 335, 176 N.W.2d at 618. The *Hanson* court's observation applied to adults and would apply to an even greater extent to children. Our review of the record, which includes consistent testimony by Shawn regarding the elements of the crime, shows ample support for the jury verdict.

## DECISION

No reversible error occurred in appellant's theft conviction.

Affirmed.