**STATE of Minnesota, Respondent,**

v.

**Alice CERMAK, Appellant.**

**No. C5–83–543.**

Supreme Court of Minnesota.

April 5, 1985.

244

C. Paul Jones, Public Defender, Michael F. Cromett, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey III, Atty. Gen., St. Paul, R. Kathleen Morris, Scott County Atty., Shakopee, for respondent.

WAHL, Justice.

Defendant was charged in Scott County with 18 counts of criminal sexual conduct. Ten of the charges were based on an incident that occurred in June of 1981 at a trailer rented by defendant's son, James, in Belle Plaine, and eight were based on similar incidents that occurred there in July of 1981. The state contended that in each incident defendant, along with her husband Stanley, her son James and his wife Beverly, and her son John and his wife Jillayne,[1] participated in the playing of a "game" in which each of the children present was sexually penetrated by one or more of the adults. The state alleged that five children were victimized in the June incident and four of these five in the July incident. Defendant was charged with one count of criminal sexual conduct in the first degree, Minn.Stat. § 609.342(a) (1982), and one count of criminal sexual conduct in the second degree, Minn.Stat. § 609.343(a) (1982), for each victim per incident, making a total of 18 counts. Subsection (a) of the two statutes is the subsection dealing with penetration (section 609.342) or contact (section 609.343) with a child under age 13 by a person more than 36 months older. Defendant was born in 1930 and was 51 years old; the children involved were three girls, ages 9, 8, and 6, and two boys, ages 5 and 3. Venue was changed to Alexandria in Douglas County. Defendant was found guilty of all eight charges involving the two older girls and was sentenced for the four more serious charges to four consecutive prison terms of 45 months, or a total of 180 months. She was found guilty only of the five lesser charges involving the other children, and for those was sentenced to five stayed terms of 21 months. On this appeal she contends that she is alternatively entitled to (1) an outright reversal of all convictions, (2) a new trial, or (3) a reduction in sentence. We affirm.

1. Defendant's first contention is that the evidence was insufficient to support her convictions and that therefore they must be reversed outright. The two older girls, who were 11 and 9½ by the time of trial, testified against defendant, as did Beverly Cermak and Jillayne Cermak, both admitted participants in the crimes. The testimony of these witnesses established that the "game," to which we earlier alluded, was played frequently and consisted of one or more of the adults getting several of the children together and ordering the children to participate in various sex acts with the adults and with the other children. As part of the "game," the adults would photograph the children in sexually suggestive poses. Sometimes, they would photograph actual sex acts between adults and children. Some of these photographs were admitted in defendant's trial.

Each of the four witnesses connected defendant to the playing of the "game." The younger of the two girls was unable to recall when the "game" was last played but testified that defendant did play the "game" on that occasion. Specifically, she recalled that defendant had digitally penetrated her rectum as well as that of the older girl. The older of the two girls testified that the "game" was last played in July of 1981 on the day that James and Beverly Cermak moved from their trailer. She testified that defendant participated in the game by digitally penetrating her and one or more of the other children present.

**1.** James Cermak was convicted of multiple offenses after a jury trial and was sentenced to 480 months in prison [*see State v. (James) Cermak*, 350 N.W.2d 328 (Minn.1984)]; John Cermak pleaded guilty to multiple offenses and was sentenced to 480 months in prison [*see State v. (John) Cermak*, 344 N.W.2d 833 (Minn.1984)]; Beverly Cermak and Jillayne Cermak both pleaded guilty to multiple offenses pursuant to plea agreements and were sentenced to stayed 43-month prison terms; Stanley Cermak was convicted of multiple offenses after a jury trial and was sentenced to 225 months in prison [*see State v. (Stanley) Cermak*, 365 N.W.2d 238 (Minn., filed herewith)].

Beverly Cermak testified that the "game" was played at the trailer both in June and on July 16, which was moving day. She testified that defendant participated on both occasions and testified further that whenever the game was played each child was penetrated by one or more of the adult participants. She did not completely recall who did what in the June incident but recalled that defendant committed fellatio on one of the boys. She recalled that in the July incident defendant digitally penetrated the rectum of one or more of the girls. Jillayne Cermak testified that defendant participated in the "game" on both occasions charged in the complaint and that on each occasion each of the children present was sexually penetrated in some way by one or more of the adults present. She had a more specific recollection of who did what at the July incident, stating, among other things, that defendant digitally penetrated the two older girls, both vaginally and rectally, and that defendant also made the girls digitally penetrate her vagina.

■ As a participant in the playing of the "game," defendant properly could be found guilty of aiding and abetting each act of penetration of or contact with each of the children. Minn.Stat. § 609.05 (1982). This being so, we conclude that the evidence was sufficient to support the convictions. In so concluding, we reject the contention that the testimony of the two girls and the two admitted accomplices was, as a matter of law, unworthy of belief.

2. Defendant next contends that she was denied a fair trial by the prosecutor's excessive reliance on evidence showing the guilt of other family members and by the erroneous admission of what she characterizes as "prejudicial and irrelevant information."

(a) Among the evidence which defendant contends pointed only to the guilt of other family members were pictures seized from James Cermak and John Cermak, defendant's sons. Over defense objection, the trial court admitted a representative selection of these pictures. The pictures show the children naked and in varying sexual poses; one of the pictures shows an adult's penis being inserted into the rectum of one of the children. Both Beverly Cermak and Jillayne Cermak were able to positively identify several of the children in the pictures, and the two girls identified themselves in two of the pictures. All four witnesses testified that taking the pictures was part of the "game" and both Beverly and Jillayne testified that defendant sometimes took the pictures herself.

Defendant argues that the pictures were not relevant within the meaning of Minn.R. Evid. 401, which defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." She argues further that even if the pictures were relevant, they should have been excluded pursuant to Minn.R.Evid. 403, which provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

■ We conclude that the pictures were relevant under the test of Rule 401 and were not otherwise excludable pursuant to Rule 403. It is true that the pictures were seized from James Cermak and John Cermak, not from defendant, that defendant does not appear in the pictures, and that the state could not establish the specific dates when the pictures were taken or that defendant was present when the pictures were taken. The state's evidence, however, indicated that defendant and the other adults, including James and John, conspired with each other to sexually abuse the children and that the conspiracy was ongoing. Under the circumstances, the pictures in question were clearly admissible against defendant even if she was not present when they were taken and even though she is not depicted in them and was not in possession of them when they were seized. *State v. Walker*, 306 Minn. 105,

235 N.W.2d 810 (1975). The significant facts are that defendant was a member of the conspiracy, that the conspiracy involved sexually abusing children by playing the "game," that the pictures were representative of pictures taken during the playing of the "game," and that defendant fully participated in the "game," including taking pictures on occasion. Some of the jurors may have been understandably reluctant to believe that parents and grandparents would abuse children in the ways described by the witnesses in their testimony. The pictures gave silent but compelling witness to the facts depicted and credence to the other testimony, thereby significantly strengthening the state's case against defendant. Balancing the relevance of the pictures against their potential for "unfair prejudice,"[2] the trial court properly exercised its discretion and admitted the pictures. *State v. Molin*, 288 N.W.2d 232 (Minn.1979) (brother of rape victim interrupted the rape and held defendant, with defendant's pants still down, while victim called police; we held on appeal that trial court properly refused to exclude, as unfairly prejudicial, the photograph police took of defendant, with his pants still down, when the police arrived on the scene); *State v. Shotley*, 305 Minn. 384, 233 N.W.2d 755 (1975) (prosecution of defendant for sodomy upon or with a child; we held that trial court properly refused to exclude evidence that police, in search of the defendant's apartment, found display of pictures depicting aberrant behavior like that of which defendant was accused).

■ (b) Defendant similarly argues that the trial court erred in admitting a tube of "Anal-eze" which was found by police in James Cermak's car. The state's witnesses specifically testified that the adult participants in the "game," including defendant, often used "Anal-eze" as a sexual lubricant. Under the circumstances, the same reasoning that supports the admission of the photographs supports the admission of this evidence.

(c) Defendant also contends that the prosecutor improperly elicited testimony by a police officer summarizing key elements of the investigation that led to the charging of defendant, including evidence that James, John, and Stanley Cermak had been investigated, charged, convicted (two after trial, one by plea), and sentenced on similar charges. Defendant contends that admission of this evidence, when the three men did not testify, constitutes reversible error.

■ We agree that generally evidence of a plea of guilty, conviction or acquittal of an accomplice of the accused is not admissible to prove the guilt or lack of guilt of the accused. *State v. Helenbolt*, 334 N.W.2d 400 (Minn.1983); *State v. Howard*, 324 N.W.2d 216 (Minn.1982), *cert. denied*, 459 U.S. 1172, 103 S.Ct. 818, 74 L.Ed.2d 1016 (1983). We also agree that a police officer testifying in a criminal case may not, under the guise of explaining how his investigation focused on defendant, relate hearsay statements of others. *State v. Hardy*, 354 N.W.2d 21 (Minn.1984).

■ In this case, however, the evidence was clearly introduced in anticipation of defendant's argument that the charges against her were questionable because they were not filed for over 1 year after the arrest of James Cermak, the first of the defendants arrested. The officer's testimony established that the children did not reveal everything immediately, that James and John were charged and prosecuted first, then Beverly and Jillayne, then Stanley and defendant. Since defendant made an issue of the adequacy of the investigation and even contended that the children were "brainwashed" into falsely accusing her, it was permissible for the prosecutor to provide the jury with the additional detail. Significantly, there were no objec-

**2.** As stated in 22 C. Wright & K. Graham, Federal Practice and Procedure—Evidence § 5215 at pages 274–75 (1978), "In Rule 403, 'prejudice' does not mean the damage to the opponent's case that results from the legitimate probative force of the evidence; rather, it refers to the unfair advantage that results from the capacity of the evidence to persuade by illegitimate means."

tions to most of the evidence, and the prosecutor in closing argument cautioned the jury not to convict defendant because the other defendants had been convicted.

■ (d) Defendant also contends that the trial court erred in admitting, over objection, testimony by Beverly Cermak that on her first date with James Cermak, James' father Stanley Cermak had anal and vaginal intercourse with her while James watched. The questions which elicited this evidence were part of a series of questions eliciting the sequence of events leading to Beverly's introduction to the aberrant sexual practices of the Cermak family. Defendant made a major effort to impeach Beverly's credibility, pointing out that she made a very favorable plea agreement in exchange for her testimony. Beverly's answers to the prosecutor's questions were extremely degrading to her and helped bolster her credibility as a witness on the theory that she would not reveal such things about herself unless they were true.

■ (e) Defendant in her brief lists numerous instances of leading questions used by the prosecutor in direct examination of state's witnesses. We are satisfied that the prosecutor's use of leading questions did not have a significant effect on the trial. Defendant objected to only four of these questions, and the trial court sustained two of the objections. If defendant had objected to the others and the trial court had sustained the objections, the prosecutor presumably would have been able to elicit the same information by the use of nonleading questions.

3. Defendant's final contention is that her sentence should be reduced. She advances two different theories in support of her contention.

(a) First, she argues that the facts did not justify an upward departure from the Sentencing Guidelines and that, in any event, the sentence she received was "unjustifiably disparate" from the sentences imposed on Beverly and Jillayne Cermak.

■ The presumptive sentence for the offense of criminal sexual conduct in the first degree (a severity level VIII offense) by a person with defendant's criminal history score (zero) is an executed term of 43 (41–45) months in prison. The 45-month term imposed by the trial court for each of the four convictions of criminal sexual conduct in the first degree is within the range of deviation permitted without the court having to give any justification. The court's use of consecutive sentencing was permissive with respect to two of the convictions (those involving different victims) and constituted a departure with respect to two of them (those involving the same victims but on different dates). Minnesota Sentencing Guidelines and Commentary II.F.06. (1984); *State v. (James) Cermak*, 350 N.W.2d 328 (Minn.1984); *State v. Wellman*, 341 N.W.2d 561 (Minn.1983). We hold that the two departures with respect to consecutive service were justified, for reasons stated in *State v. (James) Cermak*, 350 N.W.2d 328 (Minn.1984), and *State v. (John) Cermak*, 344 N.W.2d 833 (Minn.1984). We also hold that the sentence that defendant received was not "unjustifiably disparate" from the sentences that Beverly and Jillayne Cermak received as part of their plea bargain. *State v. Vazquez*, 330 N.W.2d 110 (Minn.1983).

■ (b) Defendant's alternative argument is that she should have been prosecuted under the intrafamilial sexual abuse statute and therefore should have received only the maximum sentence she would have received if she had been convicted of one offense under that statute (two times the maximum presumptive sentence duration of 45 months). This argument is answered by our decision in *State v. Love*, 350 N.W.2d 359 (Minn.1984), where we held that the legislature's passage of the intrafamilial sexual abuse statute was not intended to limit the prosecutor's discretion to prosecute under the criminal sexual conduct statute.

Affirmed.