**STATE of Minnesota, Respondent,**

v.

**Stanley Francis CERMAK, Appellant.**

**No. C0–89–12.**

Court of Appeals of Minnesota.

July 11, 1989.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, James Terwedo, Scott County Atty., Thomas J. Harbinson, Asst. Scott County Atty., Shakopee, for respondent.

John F. Markert, Bloomington, for appellant.

Heard, considered and decided by PARKER, P.J. and FOLEY and SHORT, JJ.

## OPINION

PARKER, Judge.

Stanley Cermak appeals the denial of his petition for postconviction relief. He is currently serving 225 months imprisonment for five counts of criminal sexual conduct in the first degree and five counts of criminal sexual conduct in the second degree.

Based on *Coy v. Iowa,* — U.S. —, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), Cermak argues that he was deprived of his sixth amendment rights to face-to-face confrontation and cross-examination. He also challenges his sentences, claiming that they should have run concurrently rather than consecutively and that the total 225–month sentence unfairly exaggerates the criminality of his offense. We affirm the trial court.

## FACTS

On August 12, 1982, a jury convicted Stanley Cermak of ten counts of criminal sexual assault against five of his grandchildren. The conviction came after a trial at which the two oldest children, ages nine and ten, testified for the state. The three younger children, ages four, six and seven, did not testify. The other state witnesses included the investigating officer, an attorney for Cermak's son, and Cermak's two daughters-in-law who were accomplices to the sexual abuse. The daughters-in-law testified against Cermak pursuant to plea agreements. The state did not present any expert testimony.

The trial court sentenced Cermak to 225 months, "the aggregate sentence for the five counts of criminal sexual conduct in the first degree."

In August 1988, Cermak petitioned for postconviction relief, relying primarily on a recent United States Supreme Court case, *Coy v. Iowa,* — U.S. —, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988). He interpreted that case to stand for the proposition that the trial court deprived him of his sixth amendment rights. Cermak claimed that the court's withholding of information concerning the two testifying child witnesses, the children's repeated meetings with the county attorney and social workers, and the absence of the three younger child victims as witnesses denied him his rights to effective cross examination and face-to-face confrontation. Cermak also challenged the sentence, claiming that the sentencing judge meant to impose concurrent 45–month sentences rather than consecutive ones.

The district court denied the motions and Cermak appeals.

## ISSUE

Did the district court err in denying Cermak's motions for postconviction relief?

## DISCUSSION

The district court found that Cermak's reliance on *Coy* was misplaced and that the sentencing judge clearly intended that Cermak serve consecutive sentences for a total of 225 months. We agree.

When a postconviction remedy is sought, "[t]he court * * * may summarily deny a petition when the issues raised in it have previously been decided by the court of appeals or supreme court in the same case." Minn.Stat. § 590.04, subd. 3 (1988). Furthermore, when a direct appeal was taken, matters not raised but known at the time will not be considered upon a subsequent petition for postconviction relief. *Case v. State*, 364 N.W.2d 797, 799 (Minn. 1985). Only when a claim is so novel that it can be said that its legal basis was not reasonably available to counsel upon direct appeal will postconviction relief be allowed. *Id.* at 800.

Cermak brought a direct appeal after his conviction and sentencing. At that time he was fully aware of the evidence used to convict him and of the consecutive nature of his sentences. These are, therefore, issues that we may not reconsider.

Cermak also questions the propriety of the consecutive sentencing in light of *State v. Norris*, 428 N.W.2d 61 (Minn. 1988), a case which arose after his direct appeal. In *Norris* the supreme court found that the appellant's sentence to life imprisonment plus five consecutive terms of 60 months unduly exaggerated the criminality of his conduct. *Id.* at 71. Cermak argues that his sentence to five consecutive terms of 45 months each likewise unduly exaggerates the criminality of his offense.

The comparison to *Norris* is inapposite. Norris' sentences arose out of a single behavioral incident—murder and assaults committed during an armed robbery. Cermak's offenses were not part of a single incident. Although allegedly part of a sexual "game," Cermak separately assaulted five child victims. Therefore, the sentencing judge did not depart in sentencing Cermak to 225 months imprisonment. First-degree criminal sexual conduct carries a presumptive sentence of 41 to 45 months. Cermak was found guilty of five separate counts—one for each victim—and received five consecutive 45-month sentences.

To sentence Cermak consecutively does not exaggerate the criminality of his offense. To the contrary, a concurrent sentence in this instance would seem to do the opposite. A 45-month sentence would understate the criminality of the offense, for it would fail to recognize the severity of Cermak's sexual assault against each individual child.

Turning to Cermak's primary argument, we must examine the effect of *Coy v. Iowa*, — U.S. —, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), on his sixth amendment trial rights. Cermak appears to argue that *Coy* holds a criminal defendant's right to confront his accusers means that the prosecution has a duty to make the accusers and all information pertaining to them readily available.

We do not believe that *Coy* affects Cermak's rights in any way. In *Coy* the Supreme Court reiterated its conviction that "the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." *Coy*, — U.S. at —, 108 S.Ct. at 2800. *Coy* involved the use of a screen between two juvenile sexual assault victims (testifying in court) and the alleged perpetrator. The screen enabled the defendant to perceive the witnesses dimly, but the witnesses could not see him at all. Finding that the potential trauma to the witnesses did not justify the extraordinary measure, the Supreme Court stated:

> That face-to-face presence may, unfortunately, upset the truthful rape victim or abused child; but by the same token it may confound and undo the false accuser, or reveal the child coached by a malevolent adult. It is a truism that constitutional protections have costs.

*Id.* at —, 108 S.Ct. at 2802.

Cermak had the opportunity to meet face to face all those who testified at trial. Two of the child victims actually testified and were cross-examined; there was no screen

or videotaped testimony. The three younger children were neither accusers nor witnesses. After the trial court expressed concern about the six-year-old's competence, the state elected not to put the younger children on the witness stand because their testimony was not crucial to its case. Since they did not testify, Cermak's sixth amendment right to face-to-face confrontation did not attach with respect to these children. In Cermak's direct appeal of his trial, the supreme court found that the testimony of the three younger children was not necessary to support the conviction because "a defendant can be convicted of sexual abuse or rape even if the victim does not testify." *State v. (Stanley) Cermak,* 365 N.W.2d 238, 240 (Minn.1985). Other witnesses at trial testified to what they saw Cermak do to his grandchildren, and this provided the basis for the conviction.

Cermak maintains that the testimony of the non-testifying children entered into the record through inadmissible hearsay, thus denying him the right to cross-examination. Our review of the record does not support this contention. No one at trial testified to what the non-appearing children had said about Cermak and what he did to them. No social workers or therapists were called to testify about interviews or therapy sessions with the children. The state made its case against Cermak through the testimony of the two older children and the two accomplice daughters-in-law, all of whom testified to what they saw.

◼ Finally, Cermak claims the trial court violated his sixth amendment right by denying his request for background information relating to the testifying children. He specifically sought records regarding medication, psychological tests, and meetings with therapists, social workers and Kathleen Morris, the prosecuting attorney. He claims the ruling denied him important information which would have made his cross-examination of the children more effective and unrestrictive. We disagree.

The United States Supreme Court has clearly stated that the Confrontation Clause is not a constitutionally compelled rule of pretrial discovery. *Pennsylvania v. Ritchie,* 480 U.S. 39, 52, 107 S.Ct. 989, 999, 94 L.Ed.2d 40 (1987). In *Ritchie* the Court stated:

> The opinions of this Court show that the right of confrontation is a *trial* right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination. * * * The ability to question adverse witnesses, however, does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony. * * * In short, the Confrontation Clause only guarantees 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'

*Id.* (emphasis in original).

Cermak's attorney had every opportunity for effective cross-examination of the testifying children. Cermak claims the information he sought would have helped him reveal "a child coached by a malevolent adult." *Coy,* —— U.S. at ——, 108 S.Ct. at 2802. Yet, the children's testimony at trial directly addressed the issue of coaching. The children testified to their meetings with the prosecuting attorney. They freely told the court about their friendship with Morris and the social workers and the activities they all did together. The children also stated that Morris had told them only that they must tell the truth. Cermak's attorney cross-examined both children and was unable to impeach their testimony. The fact that the cross-examination did not persuade the jury that the children were lying or could not remember the events clearly does not mean that Cermak was denied his constitutional right to confrontation.

### DECISION

The trial court's denial of postconviction relief is affirmed.