*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0541**

State of Minnesota,
Respondent,

vs.

Shawn Deangelo Jones,
Appellant.

**Filed March 21, 2016
Affirmed
Hooten, Judge**

Ramsey County District Court
File No. 62-CR-14-4139

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Kaarin Long, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer Workman Jesness, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Larkin, Presiding Judge; Rodenberg, Judge; and Hooten, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HOOTEN**, Judge

        Appellant challenges his conviction of aiding and abetting simple robbery, arguing

that (1) his conviction was not supported by sufficient evidence; (2) the district court

abused its discretion by admitting evidence of prior crimes and photographs of a weapon; and (3) the prosecutor committed prosecutorial misconduct.  We affirm.

**FACTS**

On the evening of June 7, 2014, J.F. picked up two of his friends, Deangelo Wilson and appellant Shawn Deangelo Jones, in his vehicle.  J.F. also agreed to pick up another individual, Deandre Robinson, who was not known to J.F.  When J.F. asked Jones about Robinson, Jones assured J.F. that he "didn't have to question who [Jones] brought around."  The four of them went to J.F.'s residence to hang out.

Around midnight, Wilson drove the group to a gas station in J.F.'s vehicle.  Upon arriving, Robinson went inside the gas station, approached the victim, D.L., and offered to sell him marijuana.  After D.L. agreed, Robinson and D.L. exited the gas station and got in the vehicle.

Wilson was in the driver's seat of the vehicle, with J.F. sitting in the front passenger seat.  D.L. was seated in the middle of the backseat with Jones and Robinson on either side.  What happened inside the vehicle is disputed, but when D.L. got out of the vehicle, he was missing his earrings, watch, phone, and cash.  D.L. then went to a restaurant and reported to police that he had been robbed.

After D.L. exited the vehicle, Wilson, J.F., Robinson, and Jones drove away from the gas station together.  The group dropped off Robinson and returned to J.F.'s residence.  Around 2:30 a.m., J.F. drove Jones and Wilson home, but on the way there his vehicle was stopped by police who were investigating the robbery reported by D.L.  After a search of the vehicle, the police discovered D.L.'s cell phone on the floor of the front passenger seat,

2

where Jones had been sitting, and also discovered that Jones was wearing D.L.'s watch. Jones, along with Wilson and J.F., was arrested at the scene. Approximately one month later, a search warrant was issued for a search of Robinson's residence, and police found a gun and marijuana. Robinson was arrested and charged in connection with the robbery, and Jones was charged with aiding and abetting first-degree aggravated robbery and aiding and abetting simple robbery.

At trial, the jury heard several different versions of what occurred inside the vehicle during the robbery. J.F. testified that when D.L. initially entered his vehicle, he heard a baggy opening and Robinson saying, "[H]ere you go." In response, D.L. said, "[I]t's not what it's supposed to be," and Robinson and D.L. began arguing. Robinson then demanded D.L.'s belongings. When J.F., who was sitting in the front passenger seat, briefly turned around, he saw D.L. taking his earrings out of his ears. J.F. testified that to his knowledge there were no guns in the car. According to J.F., Jones was laughing at the beginning of the robbery, and when D.L. asked for help, Jones responded, "He's a grown man, I can't do nothing about this." Jones then said, "Make sure you run his pockets." J.F. testified that after Robinson was dropped off, Jones put on a watch that was left in the backseat, commenting that he had received a free watch.

Officer Matthew Sweeney, the police officer who took D.L.'s report of the robbery, testified that D.L. had told him that the two men in the backseat of the vehicle had pointed guns at him and demanded his belongings.

Another officer, Sergeant Thomas Arnold, who later returned some of D.L.'s belongings to him, testified that D.L. stated he was robbed at gunpoint by both occupants

3

of the backseat.  D.L. told Sergeant Arnold that Jones put a gun to his side, said "run your pockets," and removed his watch from his wrist.  D.L. told Sergeant Arnold that both Jones and Robinson went through his pockets.  Sergeant Arnold stated that when he showed D.L. a photo of the gun recovered after Robinson's arrest, D.L. said that he thought the gun was one of the guns used in the robbery.  Sergeant Arnold testified that when he spoke with D.L. a few days before trial, D.L.'s statement was consistent with his first statement.

At trial, however, D.L. testified that only Robinson pulled a gun on him when he entered the vehicle to purchase marijuana and that it was Robinson who took off his watch and told him to take off his earrings.  D.L. testified that he heard other people in the vehicle say, "Don't do that."  D.L. denied feeling a gun on the left side of his body, where Jones was seated, and denied telling the police that Jones was the one who removed his watch.  D.L. denied seeing Jones with a gun during the robbery.  At trial, when he was shown a picture of the gun recovered after Robinson's arrest, D.L. stated that it did not look like the gun used in the robbery.

Finally, Jones testified that he remembered D.L. getting in the vehicle and talking to Robinson, but that he was in a "liquor coma" and was "in [his] own world."  Jones denied that he or Robinson had a gun and denied touching or speaking with D.L.  Jones testified that after D.L. left, Robinson said that he sold drugs to D.L. in exchange for some of D.L.'s belongings.  Jones testified that Robinson gave him D.L.'s watch because Robinson owed him money.

The jury found Jones guilty of aiding and abetting simple robbery, but found him not guilty of aiding and abetting first-degree aggravated robbery.  This appeal followed.

4

# DECISION

## I.

Jones argues that the evidence was insufficient to prove that he intentionally aided Robinson in robbing D.L. "In reviewing a sufficiency of the evidence challenge, we review the record in the light most favorable to the conviction to determine whether the evidence reasonably could have permitted the jury to convict." *State v. Henderson*, 620 N.W.2d 688, 704–05 (Minn. 2001).

Under the accomplice liability statute, "[a] person is criminally liable for a crime committed by another if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime." Minn. Stat. § 609.05, subd. 1 (2012). "'Intentionally' means that the actor either has a purpose to do the thing or cause the result specified or believes that the act performed by the actor, if successful, will cause that result." Minn. Stat. § 609.02, subd. 9(3) (2012). In determining whether a defendant possessed the requisite state of mind for accomplice liability, the jury may consider circumstantial evidence, "including the defendant's presence at the scene of the crime, a close association with the principal offender before and after the crime, a lack of objection or surprise under the circumstances, and flight from the scene of the crime with the principal offender." *State v. McAllister*, 862 N.W.2d 49, 53 (Minn. 2015).

Because intent is a state of mind, it is generally proven through circumstantial evidence. *State v. Essex*, 838 N.W.2d 805, 809 (Minn. App. 2013), *review denied* (Minn. Jan. 21, 2014). Compared to a conviction based on direct evidence, "[a] conviction based on circumstantial evidence . . . warrants heightened scrutiny." *State v. Al-Naseer*, 788

5

N.W.2d 469, 473 (Minn. 2010). The heightened scrutiny comes in the form of a two-step analysis. *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013).

Under the first step of the circumstantial evidence test, we consider the circumstances proved. *Id.* "[I]n determining the circumstances proved, we consider only those circumstances that are consistent with the verdict." *Id.* at 599. "As with direct evidence, we construe conflicting evidence in the light most favorable to the verdict and assume that the jury believed the [s]tate's witnesses and disbelieved the defense witnesses." *Id.* (quotation omitted).

The relevant circumstances proved in this case are as follows. Around midnight on June 7, 2014, Wilson drove J.F., Robinson, and Jones to a gas station. Upon entering the gas station, Robinson approached D.L. and offered to sell him marijuana, and D.L. agreed and got into the backseat of the vehicle. D.L. was in the middle of the backseat, with Robinson and Jones on either side. Robinson demanded D.L.'s belongings, and D.L. removed his earrings from his ears. During the beginning of the robbery, Jones was laughing, and when D.L. asked for help, Jones replied, "He's a grown man, I can't do nothing about this." Jones also told Robinson, "Make sure you run his pockets." When D.L. exited the vehicle, he was missing his watch, phone, earrings, and cash. The group dropped Robinson off, and shortly thereafter Jones found a watch on the backseat, commented that he had just received a free watch, and put it on. When the vehicle was stopped by police later that night, they found D.L.'s phone on the floor of the front passenger seat, where Jones had been sitting, and discovered that Jones was wearing D.L.'s watch.

6

"The second step is to determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Id.* (quotations omitted). Unlike the deference given to the verdict in determining the circumstances proved, "[w]e give no deference to the fact finder's choice between reasonable inferences." *Id.* (quotation omitted).

In order to prove that Jones was guilty of aiding and abetting simple robbery, the state had to prove beyond a reasonable doubt that Jones (1) "knew his alleged accomplice[] [was] going to commit a crime, and . . . (2) he intended his presence and actions to further the commission of that crime." *State v. Milton*, 821 N.W.2d 789, 805 (Minn. 2012). Jones argues that because Robinson made a "split second decision" to rob D.L., he could not have had knowledge that Robinson was going to commit a crime, as required under *Milton*. But, the Minnesota Supreme Court has held that even if a defendant did not know beforehand that a crime was about to be committed, it may be inferred "that he acquired such knowledge" as events unfolded. *McAllister*, 862 N.W.2d at 55.

Jones' alternative hypothesis that he "did not want to be involved in the crime and had no intention to aid Robinson" is unreasonable in light of the circumstances proved. The evidence shows that Jones was actively involved in the robbery by blocking D.L.'s exit, refusing to help D.L., and stating, "Make sure you run his pockets." And, after the robbery, Jones left the scene with Robinson and put on D.L.'s watch. When viewed in its totality, the circumstantial evidence supports Jones' conviction and is inconsistent with any rational hypothesis except that of guilt. The evidence is therefore sufficient to affirm his conviction.

7

## II.

Jones argues that the district court abused its discretion by admitting evidence of his prior aggravated robbery convictions. The district court admitted evidence of two prior convictions, which stemmed from an incident that occurred on June 14, 2010, when Jones and three other individuals, including Robinson, went to a basketball court. The group began gambling with another group of individuals they did not know by wagering money on basketball shots, which is a crime under Minn. Stat. § 609.755(1) (2008). After losing money to the other group, Jones became angry and left the scene in order to acquire a gun. Upon returning to the basketball court, Jones held a gun on the other individuals while Robinson and another accomplice removed two of the victims' belongings, including cash and a cell phone. After being arrested for this offense, Jones pleaded guilty to two counts of aggravated robbery.

The admissibility of evidence of other bad acts, known as *Spreigl* evidence, lies within the discretion of the district court and its admission will not be reversed absent a clear abuse of discretion. *State v. Spaeth*, 552 N.W.2d 187, 189 n.2, 193 (Minn. 1996); *see State v. Spreigl*, 272 Minn. 488, 490, 139 N.W.2d 167, 169 (1965). Evidence of the defendant's other bad acts is not admissible to prove that the defendant acted in conformity with his character. Minn. R. Evid. 404(b). But, such evidence may be admissible for another purpose, including "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* District courts must follow a five-step process in determining the admissibility of *Spreigl* evidence:

8

> (1) the state must give notice of its intent to admit the evidence; (2) the state must clearly indicate what the evidence will be offered to prove; (3) there must be clear and convincing evidence that the defendant participated in the prior act; (4) the evidence must be relevant and material to the state's case; and (5) the probative value of the evidence must not be outweighed by its potential prejudice to the defendant.

*State v. Ness*, 707 N.W.2d 676, 685–86 (Minn. 2006). Jones challenges only the application of the fourth and fifth steps.

**Relevance and Materiality**

First, Jones argues that the district court erred by failing to identify the precise disputed facts to which the *Spreigl* evidence was relevant. "In assessing the probative value and need for the evidence, the district court must identify the precise disputed fact to which the *Spreigl* evidence would be relevant." *Ness*, 707 N.W.2d at 686 (quotation omitted). The district court did not state on the record the precise disputed fact to which the evidence of the other crimes was relevant. But, the state had represented that the *Spreigl* evidence was necessary in order to prove the disputed facts of whether Jones robbed the victim and whether he possessed a firearm. In response to the state's identification of these disputed facts, the district court implicitly acknowledged the identified dispute by admitting the *Spreigl* evidence.

Jones also argues that the *Spreigl* evidence was not relevant. The state's purpose for introducing the *Spreigl* evidence was to show a common scheme or plan. "[T]he common scheme or plan exception includes evidence only of offenses that have a *marked similarity* in modus operandi to the charged offense." *Id.* at 688 (quotation omitted). The relevance of the evidence is determined by "focus[ing] on the closeness of the relationship

9

between the other crimes and the charged crimes in terms of time, place, and modus operandi." *Id.* at 688–89 (quotations omitted). "[T]he closer the relationship between the other acts and the charged offense, in terms of time, place, or modus operandi, the greater the relevance and probative value of the other-acts evidence and the lesser the likelihood that the evidence will be used for an improper purpose." *Id.* at 688. The Minnesota Supreme Court has held that *Spreigl* evidence is admissible under the common scheme exception "to establish that the conduct on which the charged offense was based actually occurred or to refute the defendant's contention that the victim's testimony was a fabrication or a mistake in perception." *Id.*

Jones argues that his prior crimes are not relevant to the disputed issues in this case because the prior crimes were not committed in a markedly similar way to the charged offenses. We disagree. The prior crimes were markedly similar to the charged crimes. The prior crimes were aggravated robberies, while the charged crimes were aiding and abetting aggravated robbery and aiding and abetting simple robbery. The prior crimes involved Jones holding multiple victims at gunpoint while his friends, including Robinson, relieved the victims of their belongings. The charged crimes here allegedly involved Jones and Robinson holding the victim at gunpoint and robbing him of his belongings. The prior crimes and the charged crimes both involved Jones and his acquaintances robbing people whom they did not know, allegedly using firearms.[1] True, the prior crimes involved a

---

[1] Jones argues that the charged crimes were different than the prior crimes because Jones did not possess a gun in the charged crimes. But, Jones' possession of a gun was a disputed fact at trial, and the state presented evidence that Jones possessed a gun during the robbery. While the jury found Jones not guilty of aggravated robbery, this acquittal does not change

10

robbery that occurred outside, while the charged crimes occurred within the confines of a private vehicle. And, as Jones points out, in the prior crimes Jones left the basketball court to acquire a firearm and robbed the victims upon his return approximately 11 to 12 minutes later, while no such lapse in time occurred here. But, the prior crimes and the charged crimes both involved Jones, Robinson, and some of their acquaintances approaching strangers, agreeing to engage in an illegal pursuit with them, and then robbing the victims, allegedly with firearms, when the pursuit did not go as planned.

The prior crimes here took place almost exactly four years before the charged crime. "[T]he more distant the *Spreigl* act is in terms of time, the greater the similarities as to place and modus operandi must be to retain relevance." *State v. Wright*, 719 N.W.2d 910, 918 (Minn. 2006) (quotation omitted). But, *Spreigl* acts that are more distant in time may still be relevant if "the defendant spent a significant part of that time incarcerated and was thus incapacitated from committing crimes." *Id.* (quotation omitted). Jones was sentenced to 68 months in prison for his prior aggravated robberies, was imprisoned until March 27, 2014, and committed the charged crimes approximately ten weeks after his release from prison. Because the prior crimes were markedly similar in time and modus operandi to the charged crimes, the prior aggravated robberies are relevant to show a common scheme.

**Probative Value versus Potential Prejudice**

Jones also argues that the "minimal" probative value of the *Spreigl* evidence was substantially outweighed by its prejudicial effect. In determining whether the evidence's

---

the fact that Jones was alleged to have possessed a gun during the robbery at the time that the district court ruled that the *Spreigl* evidence was admissible.

probative value outweighs its prejudicial impact, we balance the relevance of the evidence and "the [s]tate's need to strengthen weak or inadequate proof" against the risk that the evidence will be used as propensity evidence. *State v. Fardan*, 773 N.W.2d 303, 319 (Minn. 2009). *Spreigl* evidence may be needed because "it is not clear that the jury will believe the state's other evidence bearing on the disputed issue." *Ness*, 707 N.W.2d at 690 (quotation omitted). "Prior bad act evidence can be unfairly prejudicial if it is used by the jury for an improper purpose, such as proof of a defendant's propensity to commit the charged offense or general propensity for violence." *State v. Scruggs*, 822 N.W.2d 631, 644 (Minn. 2012).

In terms of probative value, the central issues in this case were whether a robbery occurred and whether a firearm was used to rob the victim. Jones asserted that a robbery did not occur and that, if a robbery did occur, he was unaware of it and was uninvolved. The *Spreigl* evidence had significant probative value in light of the state's need to refute Jones' contention that no robbery took place or that he was unaware of the robbery and D.L.'s testimony at trial that Jones was uninvolved with the robbery. In terms of prejudice, because the district court read a cautionary instruction to the jury immediately before the state presented its *Spreigl* evidence and once again before the jury started deliberating, the probability that the jury would give undue weight to the *Spreigl* evidence was lessened. *State v. Kennedy*, 585 N.W.2d 385, 392 (Minn. 1998). Therefore, we conclude that the district court did not abuse its discretion in determining that the probative value of the *Spreigl* evidence outweighed its prejudicial impact.

## III.

12

Jones argues that the district court abused its discretion by admitting into evidence two photographs of the gun that was recovered from the residence where Robinson was arrested. Jones' attorney objected to the admission of the photographs, arguing that they were not relevant and were unduly prejudicial. We review a district court's evidentiary ruling for an abuse of discretion. *State v. Bolstad*, 686 N.W.2d 531, 541 (Minn. 2004).

Generally, relevant evidence is admissible. Minn. R. Evid. 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Minn. R. Evid. 401. Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Minn. R. Evid. 403.

Jones contends that the photographs were irrelevant because they did not help the jury determine whether he committed the robbery. But, the gun was relevant to the charge of aiding and abetting aggravated robbery, which requires that a perpetrator be "armed with a dangerous weapon or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a dangerous weapon." Minn. Stat. § 609.245 (2012). And, as the prosecutor noted in her closing argument, the state had to prove that someone at the scene of the crime had a gun in order for the jury to convict Jones of aiding and abetting aggravated robbery.

Jones argues that the recovered gun was a different type of gun than the gun that D.L. testified was used in the robbery. Sergeant Arnold testified, however, that before trial, D.L. stated, when shown one of the photographs, that he thought the photograph showed the gun used by Robinson in the robbery. Jones notes that the photographs are of a gun

13

found at the residence where Robinson was arrested a month after the robbery, arguing that the time between the recovery of the gun and the robbery is too distant for the gun to be relevant, citing *State v. Daniels*, 361 N.W.2d 819, 828 (Minn. 1985). But, while the supreme court in *Daniels* upheld the exclusion from evidence of photographs of a crime scene taken 14 months after the crime, *id.*, here the gun was located only one month after the robbery. Because the use of a dangerous weapon was central to the charge of the aiding and abetting aggravated robbery, the photographs of the gun recovered at the residence where Robinson was arrested were relevant.

Jones also claims that the photographs were unfairly prejudicial, arguing that the photographs "painted [him] as someone who associated with a violent criminal." The presence of a gun, however, was an element of one of the charged offenses, Minn. Stat. § 609.245, and the jury had already heard the state's theory of Jones' conduct through opening statements and the testimony of J.F., D.L., and Officer Sweeney. We conclude that the probative value of the photographs was not substantially outweighed by the danger of unfair prejudice. Therefore, the district court did not abuse its discretion by admitting the photographs of the gun into evidence.

**IV.**

Finally, in his pro se supplemental brief, Jones argues that the prosecutor engaged in multiple incidents of misconduct at trial. Specifically, Jones argues that the prosecutor's references to Robinson during the trial constituted prosecutorial misconduct because Robinson was in the courtroom.

14

We review claims of prosecutorial misconduct, to which there was no objection at trial, for plain error. *State v. Ramey*, 721 N.W.2d 294, 299 (Minn. 2006). The defendant has the burden to show that there was error and that the error was plain. *Id.* at 302. The burden then shifts to the state to show that the misconduct did not affect the defendant's substantial rights. *Id.* We review claims of prosecutorial misconduct, to which there was an objection at trial, under "a harmless-error test, the application of which varies based on the severity of the misconduct." *State v. Carridine*, 812 N.W.2d 130, 150 (Minn. 2012).

First, Jones claims that the prosecutor committed misconduct by pointing out that Robinson was in the courtroom. During the testimony of Sergeant Arnold, the prosecutor asked the officer if he recognized anyone in the gallery of the courtroom. When Sergeant Arnold responded affirmatively, the prosecutor asked whom he recognized. Before Sergeant Arnold could testify that Robinson was in the courtroom, defense counsel objected to the relevance of the question, and the district court sustained the objection. Because the jury never heard that Robinson was present in the courtroom, there was no error here.

Next, Jones notes that Sergeant Arnold pointed out Robinson a number of times while describing the events shown on the surveillance tape of the gas station and argues that this was "irrelevant and highly prejudicial." Sergeant Arnold, however, pointed out the movements of all of the individuals involved. Furthermore, Robinson's actions were highly relevant because the state alleged that Jones aided and abetted Robinson in committing the robbery.

15

Jones argues that he did not receive a fair trial because the prosecutor implied to the jury that because Robinson had been convicted in connection with the robbery, Jones was guilty as well. The prosecutor asked Sergeant Arnold whether he was familiar with the fact that both Robinson and Wilson were charged in this case and that both of them were convicted, and the sergeant responded affirmatively to both questions. Defense counsel did not object. The prosecutor made no mention of Robinson and Wilson's convictions in closing arguments.

Because Jones did not object to the reference to the convictions of his co-defendants, we review for plain error. *Ramey*, 721 N.W.2d at 299. "An error is plain if it is clear and obvious . . . ." *State v. Matthews*, 779 N.W.2d 543, 548 (Minn. 2010).

As a general rule, "evidence of a plea of guilty, conviction or acquittal of an accomplice of the accused is not admissible to prove the guilt or lack of guilt of the accused." *State v. Cermak*, 365 N.W.2d 243, 247 (Minn. 1985). But, the admission of such evidence is not automatically barred. In *Cermak*, at trial a police officer referred to the fact that three other defendants had been charged and convicted as a result of the same investigation. *Id.* After acknowledging that such evidence is usually not admissible, the supreme court held that the admission of the evidence was not erroneous because "the evidence was clearly introduced in anticipation of defendant's argument that the charges against her were questionable." *Id.* Here, like in *Cermak*, the testimony regarding the other defendants' convictions seems to have been elicited in order to rebut the defense argument that no robbery had occurred, as defense counsel had argued in his opening statement.

Therefore, there was no error in eliciting the testimony that Jones' co-defendants had been convicted.

Jones argues that the jury saw Robinson in the courtroom and convicted him based on guilt by association. The trial was a public hearing, however, and Robinson had the right to attend the trial.

Finally, Jones argues that "the judge never told the jury to disregard . . . the prosecutor[ial] misconduct." But, as already discussed, there was no prosecutorial misconduct in this case.

**Affirmed.**